[Civ. No. 25214.    Second Dist., Div. Three.    Feb. 23, 1962.]

LEOLA SILVA, as Administratrix with the Will Annexed, etc., Plaintiff and Appellant, v. JEROME COHN, Defendant and Respondent.

Irmas & Rutter and William A. Rutter for Plaintiff and Appellant.

Louis C. Hoyt and Ernest M. Silver for Defendant and Respondent.

FORD, J.—The question presented on this appeal is whether a surviving partner was entitled to retain as his own the proceeds of insurance on the life of his deceased partner or whether he was required to account for such proceeds as part

of the assets of the partnership. The trial court's determination was in favor of the surviving partner.

The plaintiff is the administratrix with the will annexed of the deceased partner, Barney Silva. In the life insurance policy Barney Silva was named as the insured; the defendant, Jerome H. Cohn, then Silva's partner, was designated as the applicant and the right to change the beneficiary was reserved to him.[1] Cohn was named as the beneficiary of the policy and his relationship to the insured was stated to be that of a partner. The policy was issued as of August 7, 1958. Silva died on March 17, 1959.

At the trial, the defendant was called as a witness by the plaintiff under the provisions of section 2055 of the Code of Civil Procedure. He testified that he and Silva had been engaged as partners in the operation of three restaurants. In the summer of 1958, the partners decided to purchase some life insurance and contacted Nat Teller, an insurance agent. Two policies were issued. Each partner was the beneficiary named in the policy in which the other was the insured. The amount of the insurance under each policy was $10,000, except that there was a provision for the payment of the additional sum of $10,000 in the event of accidental death. ▆▆▆ The witness testified as follows as to the discussions of the partners with respect to the use of the proceeds if one partner should die: "If either one of us died, the survivor would have some money with which he would be in position to pay the debts as they became due. . . . Yes, the debts of the partnership. . . . Either debts that would arise out of the operation of the partnership or debts we already had." There were substantial debts both at the time the policies were obtained and at the time of Mr. Silva's death. At the latter time, there was

---

[1]The following rider was attached to the policy:

"APPLICANT AND RIGHTS OF THE INSURED

"THIS POLICY IS ISSUED IN PURSUANCE OF THE APPLICATION OF THE APPLICANT NAMED ON THE FIRST PAGE HEREOF AND SUBJECT TO THE RIGHTS OF ANY IRREVOCABLY APPOINTED BENEFICIARY, SUCH APPLICANT, HIS OR THEIR PERSONAL REPRESENTATIVES, SUCCESSORS OR ASSIGNS, AS THE CASE MAY BE, SHALL AT ALL TIMES HAVE AND MAY EXERCISE WITHOUT THE CONSENT OF THE INSURED OR THE BENEFICIARY ALL THE RIGHTS, ELECTIONS, POWERS AND PRIVILEGES WHICH IF THIS POLICY DID NOT CONTAIN THIS PROVISION WOULD BE HAD AND COULD BE EXERCISED BY THE INSURED OR THE BENEFICIARY OR THE INSURED AND BENEFICIARY JOINTLY. THE INTEREST OF ANY BENEFICIARY WHO SHALL DIE DURING THE LIFETIME OF THE INSURED WHICH BUT FOR THIS PROVISION WOULD VEST IN THE INSURED SHALL INSTEAD VEST IN THE APPLICANT. ALL OTHER PROVISIONS OF THIS POLICY ARE SUBJECT TO THIS PROVISION."

an overdraft on the bank account of $6,558.73 and there were current accounts payable of $3,365.60. In addition, there were loans and notes payable in the total amount of $24,503.63, $4,400 thereof being owed to the defendant. At about the time that the application for the policy was made, Mr. Silva told the defendant that he had applied for an additional policy in which someone else was named as beneficiary. The premiums for that policy were not paid through the business.

Under examination by his own counsel, the defendant said that the conversations concerning insurance occurred on about four occasions over a period of approximately one month. The substance thereof was stated to be as follows: "We discussed the fact that we had a lot of debts and we wanted the survivor to have some money so that if either one of us died, if I died, that he would have the money; if he died, then I would have the money; that we would have some money and if we elected to, we would be able to continue the business; we would have money with which to meet our obligations. The obligations we already had or operational obligations as they became due. We wanted the survivor to have some money available to be able to continue the business if he wanted to." There was no discussion to the effect that the money was to belong to anyone other than the surviving partner.

Mr. Herman, a public accountant employed by the partners, testified that a check of the partnership dated August 25, 1958, in the sum of $150.20 was drawn in favor of the insurance agent in payment of the first premiums on the two life insurance policies. Both partners signed that check. The annual premium on the policy on the life of Silva was $79.40 and that on the policy on Cohn's life was $70.80. The witness charged the personal drawing account of each partner with one-half the amount of the check "to show that they had each made a withdrawal from the business of $75.10," but he did not talk to either partner about that matter before doing so. He did not learn of the difference in amount of the respective premiums on the policies until the day of the trial. About two weeks after Mr. Silva's death, the defendant told Mr. Herman, "Well, we're going to use it [the insurance proceeds] to help pay some of the debts, if any one presses," or "words to that effect." The witness gave each partner a monthly statement as of the end of August 1958, relating to the business. That statement showed a charge of $75.10 against each partner; neither complained about the statement or asked for any correction.

The defendant testified that after Silva's death, he told Mr. Herman that when the money came in from the policy it would be available and ''we would be able to retire the debts as they became due if we wanted to. . . .'' The defendant knew that he was responsible for the debts of the partnership.

It was the function of the trial court to ascertain from the conduct and course of dealing of Silva and Cohn their intent as to whether the particular policy of life insurance was to constitute part of the partnership property. (See *Sneed* v. *Kanelos*, 150 Cal.App.2d 684, 688-689 [310 P.2d 706].) That court found that Silva and Cohn intended that the policy as to which Cohn was the applicant should ''be and remain the individual property and asset'' of Cohn. It determined that the proceeds thereof were not assets or funds of the partnership and hence the surviving partner had no obligation to account therefor.

In resolving the question of whether there was substantial evidence in support of the essential finding of fact of the trial court, we must examine the evidence in the light most favorable to the finding, disregarding any contrary evidence and the inferences that might have been, but presumably were not, drawn therefrom. (*Oliver* v. *Boxley*, 181 Cal. App.2d 471, 473 [5 Cal.Rptr. 468].) It is clear that each partner was the sole applicant for the insurance on the life of the other. Care was taken to vest in the applicant all the indicia of complete beneficial ownership of the particular policy. One-half of the total amount of the annual premiums on the two policies was charged to the personal drawing account of Silva and the other half to the personal drawing account of Cohn. It is true that the annual premium on the policy on Cohn's life, for which Silva applied, was $8.60 less than that for the policy involved in this action, but the partners were given a monthly statement in which such charges appeared and they apparently acquiesced in the manner in which the matter was handled by their accountant. Under the circumstances the inference that each policy was intended to be the individual property of the applicant, and not in any sense an asset of the partnership, finds substantial support in the record. (Cf. *Sneed* v. *Kanelos, supra,* 150 Cal.App.2d 684, 689-690; *Fleming* v. *Fleming,* 194 Iowa 71 [180 N.W. 206, 184 N.W. 296, 297].)

The judgment is affirmed.

Shinn, P. J., concurred.