[Civ. No. 26595. Second Dist., Div. Four. May 13, 1963.]

MILDRED E. ESSWEIN, Plaintiff and Appellant, v. JOHN A. ROGERS, Defendant and Respondent.

James E. Green and Jacque Boyle for Plaintiff and Appellant.

Borah & Borah and Julius Borah for Defendant and Respondent.

BISHOP J. pro. tem.*—The sum of $10,000, one-half of that paid to the defendant under an insurance policy on the life of his one-time partner, is the main stake in this

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

action. For several years preceding his death, Frank L. Esswein and the defendant were partners operating under the name of E & R Machine and Mfg. Co. The plaintiff, the widow and executrix of the will of Frank L. Esswein, claiming that the $20,000 received by the defendant was a part of the assets of the partnership, sought an accounting. The defendant filed a cross-complaint, asking for a declaratory judgment decreeing that he held the entire proceeds from the insurance policy as his own, and not as a partnership asset. The trial court entered a judgment for the cross-complainant and we are affirming it.

As we read appellant's earnest argument on this appeal, we discover three main premises: (1) under an insurance policy, in which the owner retains the right to change the named beneficiary, the beneficiary named has not a vested but only a contingent interest; (2) an assignment of the policy gives the assignee the right, superior to that of the beneficiary, to the proceeds of the policy; and (3) the assignment extinguishes the right of the named beneficiary. As will appear, we entertain no doubt whatever about the soundness of the first two premises, but find the last one not to be sound in a case, such as this, where the assignment was for collateral security only and not intended to pass title unconditionally.

Many facts were agreed upon in a pretrial statement. John Rogers (defendant) and Frank L. Esswein (insured) were partners from June 1, 1955, to the insured's death, October 11, 1960. Under date of November 3, 1955, the two entered into a partnership agreement, their purpose being to carry on a general machine shop and manufacturing business. Their interests were to be equal, during the life of the partnership, and its assets were to be divided equally, should they dissolve it. In the event of the death of one of them, while the partnership still continued, the survivor was given the option of purchasing the interest of the deceased partner at a price to be determined after deducting all debts and liabilities of the partnership.

In August of 1955 the two partners insured their respective lives in the amount of $20,000 each, the policies being identical, except as to the beneficiaries and those insured. The policy covering the life of Frank L. Esswein contained a rider: "If this Policy matures by death, the proceeds then payable in accordance with the terms of the Policy shall be payable in one sum to John A. Rogers, Beneficiary, business associate of the Insured, if living, otherwise to E & R Machine

and Manufacturing Company . . . , a partnership, as such partnership now exists or may hereafter be constituted, Beneficiary." There was another rider on the policy stating that ". . . all legal incidents of ownership and control of the Policy, including any and all benefits, values, rights, option and privileges conferred upon the Insured by the Policy or allowed by the Company shall belong to the following Owner: E & R Machine and Manufacturing Company. . . , A partnership, as such partnership now exists or may hereafter be constituted." Later in the policy we find it stated, "The Beneficiary under this Policy may be changed from time to time, upon proper written request, . . ."

All premiums on the two policies were paid with partnership checks, at first charged in equal amounts in the respective drawing accounts of the two partners, after July 28, 1958, carried on the books as a partnership expense.

■ Were these all the pertinent facts, no one would doubt, surely, that upon the death of Esswein, as the named beneficiary the defendant became entitled to the $20,000 payable under the policy. (*Estate of Welfer* (1952) 110 Cal.App.2d 262, 265 [242 P.2d 655, 656].) The circumstance that the policy was owned by the partnership would not cast any doubt upon the defendant's claim; he was the named beneficiary. The circumstance that the E & R Machine and Mfg. Co. was a contingent beneficiary, to take if John Rogers was not living at the time of Esswein's death, turned out to be a fact of no consequence; he was living. To be sure, John A. Rogers did not have a vested interest, because the owner of the policy retained the right to change the beneficiary. But it has not done so, and the contingency upon which his (John Rogers') right was based, that the insured die while he remained the beneficiary, had occurred.

Now we consider the effect of another fact. On February 4, 1958, the E & R Machine and Mfg. Co. assigned each policy to the Sun Valley National Bank. "This assignment is made and the Policy is to be held as collateral security for all indebtedness and liabilities of any nature . . . and any proceeds of the Policy paid to Assignee pursuant to this assignment may . . . be applied on account of any of the aforesaid Liabilities. . . . Any balance that may remain with Assignee after payment of such liabilities shall be paid to the persons entitled thereto under the terms of the Policy.

"  .    .    .    .    .    .    .    .    .    .    .    .    .

"This assignment . . . shall continue in full force and effect until payment in full of all the aforesaid liabilities. . . ."

The assignment, authorized both by a term of the policy and by section 10130 of the Insurance Code, undoubtedly gave the assignee rights to any proceeds of the insurance policy superior to the rights of the named beneficiary, during the life of the assignment. But had the indebtedness that the assignment secured been paid off before the insured's death, and the assignment been released, on no principle of law should it then be held that the temporary existence of the assignment had effected a rewriting of the policy so that John A. Rogers was no longer its named beneficiary, or that the temporary precedence obtained by the assignee had extinguished, put an end to, the rights of the beneficiary. The assignment—need it be said again—was by way of collateral security. It was not a permanent passing to the assignee of the right to collect the insurance. We see no reason to doubt that although defendant's rights had been made inferior to those of the bank while the assignment was in effect, with the release of the assignment his right, contingent to be sure, but nevertheless given him by a term of the policy that had never been changed, again became fully effective.

At the time of Esswein's death the obligation secured by the assignment of the policy was $18,519.36. The creditor could have made claim for the sum to be paid under the policy, and the indebtedness would have been paid, with a sum over to be paid to beneficiary. But that which happened was not a claim to the insurance money under this assignment, but a release of the assignment. Thereupon, the provision of the policy naming Rogers as the beneficiary remaining unchanged, and no supervening assignment remaining in effect, the policy was payable to him and the payment was quite properly made to him.

The question remains: do circumstances exist that call for the conclusion that Rogers received, holds and should be made to account for the $20,000 as partnership property? Had it been the intention that each beneficiary should receive and account for the proceeds from the other's policy as property of the partnership, the E & R Machine and Mfg. Co. would have been named as the primary beneficiary and not the beneficiary only if the one first named were not living. The fact that the premiums were paid for out of partnership funds does not justify an affirmative answer to the question. Surely partners may provide, at the expense of the partnership that each shall be insured, with his wife as the beneficiary, just as each partner may be given a monthly sum out of partner-

ship funds to be expended as the recipient wishes. No principle of law dictates that partners shall not agree to make use of partnership funds for other than purely partnership purposes.

We have arrived at the conclusion we have expressed, that the named beneficiary was entitled to the insurance money as his own, without regard to the evidence that was received by the trial court of conversations had by and with the partners revealing the reasons advanced for their taking out the two policies. The contention is made on this appeal that it was prejudicial error to admit that evidence. We have determined that if it was error it was not prejudicial, for it led the trial court to the conclusion that it should have reached without the evidence. We do not believe that it was error, however, for that which the conversation revealed was the purpose that was in the minds of the partners when they took out the policies, and "It was the function of the trial court to ascertain from the conduct and course of dealing of [the partners] their intent as to whether the particular policy of life insurance was to constitute part of the partnership property," as the reviewing court stated in *Silva* v. *Cohn* (1962) 200 Cal.App.2d 651, 654 [19 Cal.Rptr. 469, 471-472].

In the case just cited the intent was largely gathered from the conversation between the partners, in which they discussed the purpose in having the two policies, in each of which one partner was the insured and the other partner was the beneficiary. The purpose was in large part to enable the other to pay any outstanding debts of the partnership in event of the death of one of them. The trial court determined that the proceeds of the policy that was involved, one of the partners having died, were not assets of the partnership and hence the surviving partner did not have to account for them. The judgment that followed was affirmed.

There were some matters other than the destiny of the insurance money upon which interest was centered at the trial. Many points of accounting were settled by a compromise reached between the parties, and it was stated: ". . . the only issues to be resolved will be the insurance problem and the items involving the parts in stock and raw material on hand." The appellant is critical of the figure of $300 that the trial court placed on the items mentioned, on the ground that no one testified to that figure. As the plaintiff herself points out, however, there was evidence that the value was no more than $200. Under the circumstances she cannot

complain of the $300 allowance. It is quite evident that the trial court did not accept the much greater value placed by plaintiff's evidence, and a trial court is not limited in its finding of value to the exact figure that some witness places upon an item.

We see no good to be served by extending this opinion by commenting on some other points that appear in plaintiff's argument. We have considered all of them and find no one to warrant a reversal, or modification, of the judgment. The judgment is affirmed.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied June 7, 1963, and appellant's petition for a hearing by the Supreme Court was denied July 10, 1963.