[Civ. No. 42109. First Dist., Div. One. Sept. 26, 1978.]

GERALD D. COCHRAN, as Assessor, etc., Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF DEL NORTE COUNTY,
Defendant and Respondent;
MILLER REDWOOD COMPANY et al., Real Parties in Interest
and Respondents.

**COUNSEL**

Bagshaw, Martinelli, Corrigan & Jordan and Leland H. Jordan for Plaintiff and Appellant.

James J. Delaney and J. K. McManigal as Amici Curiae on behalf of Plaintiff and Appellant.

Thomas S. Owen, County Counsel, for Defendant and Respondent.

Pillsbury, Madison & Sutro, Alson R. Kemp, Jr., C. Douglas Floyd and Stephen P. Chambers for Real Parties in Interest and Respondents.

**OPINION**

**NEWSOM, J.**—This is an appeal by the Assessor of Del Norte County after denial of his petition for a writ of mandamus in the Del Norte County Superior Court.

The case arises under the following circumstances.

On April 1 and 2, 1976, the Del Norte County Board of Supervisors (hereafter Board), sitting as a board of equalization, held hearings on the applications of Harold A., Jane S. and Prudence M. Miller, Joanne M. and Theodore Lilley, Achsah J. Graham, Darrell H. Schroeder, and Miller Redwood Co. (hereinafter applicants) for a reduction in the escape assessments made by the assessor on land to which variously they hold record title. The assessment was based upon the assessor's conclusion that the lands owned by applicants should have been valued as separate tracts, and, as such, would have been both valued and taxed more highly. As appears in greater detail below, the Board disagreed, and its views were sustained by the trial court, leading to the present appeal.

## I.

A perusal of the record reveals that the individual applicants are closely related: Harold and Jane Miller are husband and wife; Prudence Miller, Achsah Graham and Joanne Lilley are their daughters; Theodore Lilley is Joanne's husband; and Darrell Schroeder, though unrelated by blood or marriage to the other applicants, is a key employee of the family lumber enterprise. Miller Redwood Company and Rellim Redwood Company are wholly owned subsidiaries of Stimson Lumber Company, and the individual applicants together own at least 90 percent of the stock of Stimson.

The subject lands are owned of record by the applicants in a variety of combinations. Tracts are held individually by Harold A. Miller, Jane S. Miller, Joanne M. Lilley, Achsah Jane Graham, and Miller Redwood Co. The remaining tracts are held by groups: Harold A., Jane S., Prudence and Achsah Miller are one; Harold A. Miller, Theodore Lilley and Darrell H. Schroeder another; and Harold A. Miller and Darrell H. Schroeder form the third group.

A web of contractual rights binds the tracts together. Rellim has the right to cut timber on all tracts, and title to the timber thereon once the

trees are felled. Its parent company, Stimson, has the right of first refusal to purchase any of the lands on the death of the owner. Stimson also has, by virtue of a shareholders' agreement, an option to purchase stock sold by any shareholder, and, if it declines, that right inures to the benefit of individual shareholders in proportion to their ownership.

Indeed, it is fair to say that the applicants have bound themselves in such a manner that no one of them is free to deal with his land except in the manner set forth in these numerous contracts.

## II.

An important preliminary consideration on this appeal is the scope of our review. Plaintiff's contentions are grounded in his interpretation of title 18, section 41 of the California Administrative Code, which provides in pertinent part:

"In determining the timber to be valued as a unit, there shall be combined those parcels having:

"(1) The same legal ownership. Timber sale contracts shall not be included in the unit.

"(2) Commercial timber production as a dominant use.

"(3) Geographical and physical conditions which permit similar treatment and economic removal of the timber to a common processing center. The typical practices of timberland owners and timber purchasers shall be used as a guide to indicate the geographical areas which are suitable for inclusion in the unit. Parcels shall not be excluded from the unit because they are outside the county, or because they are eligible for assessment under section 423.5 of the Revenue and Taxation Code." The rule then goes on to provide in essence for a lower valuation process on larger tracts, based upon the notion that larger timber units require a longer harvest.

Referring to these provisions the Board readily found—as was virtually uncontested—that criteria two and three were established. The central issue, therefore, was whether the lands had the "same legal ownership." The Board found, in "Finding of Fact No. 8," that the applicants met the *same legal ownership* test, since they were conducting a family timber business as a partnership. Moreover, the Board found that, irrespective of

rule 41, the fair market value of the subject land would be maximized if the land were treated as a unit.

■ We accordingly are confronted at the outset with the question of what weight should be given the Board's findings in this respect. Since the supervisors, sitting as an equalization board, pursuant to article XIII, section 16, of the California Constitution, exercise quasi-judicial powers, we consider that their factual determinations are entitled on appeal to the same deference due a judicial decision, i.e., review under the substantial evidence standard. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35-36 [112 Cal.Rptr. 805, 520 P.2d 29]; *Westlake Farms, Inc.* v. *County of Kings* (1974) 39 Cal.App.3d 179, 182-185 [114 Cal.Rptr. 137].) ■ The Board's conclusions of law, however, are subject to independent reassessment. (*Georgia-Pacific Corp.* v. *County of Butte* (1974) 37 Cal.App.3d 461, 473-474 [112 Cal.Rptr. 327].)

■ Our view of finding No. 8 is that it is a conclusion of law rather than of fact; the conclusion being that, using the valuation factors stipulated, the lands should be valued as a unit under rule 41. The interpretation of that rule, the meaning of the phrase "same legal ownership" and the strictness with which all three criteria are to be applied are all in our view legal, not factual, questions, and in the discussion which follows, will be reviewed de novo. Factual conclusions, on the other hand, will be reviewed in the context of the substantial evidence rule, and under well-established legal principles we will decline in every instance to substitute our view of factual matters for that of the Board.

### III.

A primary factual finding by the Board is that the applicants' timber operations constituted a partnership. A partnership is "an association of two or more persons to carry on as co-owners a business for profit." (Corp. Code, § 15006, subd. (1).) This definition has been amplified and rephrased as requiring a community of interest in the business and a sharing of profits and losses. (*Swofford* v. *Industrial Acc. Com.* (1953) 121 Cal.App.2d 400, 401 [263 P.2d 129]; *Nelson* v. *Abraham* (1947) 29 Cal.2d 745, 749 [177 P.2d 931].)

■ The rules for determining the existence of a partnership are set forth in Corporations Code section 15007. In relevant part, they provide that coownership of any sort and profit-sharing are factors tending to

establish partnership. A written agreement is not necessary. (*Smalley* v. *Baker* (1968) 262 Cal.App.2d 824, 838 [69 Cal.Rptr. 521]; *Perelli-Minetti* v. *Lawson* (1928) 205 Cal. 642, 647 [272 P. 573].) The intent of the parties as revealed in the terms of their agreement is, of course, a crucial factor in determining whether a partnership exists, as are the conduct of the parties and the surrounding circumstances. (*Constans* v. *Ross* (1951) 106 Cal.App.2d 381, 386-387 [235 P.2d 113]; *Lyon* v. *MacQuarrie* (1941) 46 Cal.App.2d 119, 124-125 [115 P.2d 594].) If, using these criteria, a partnership were to be found, it would not be disproved by a finding of unequal duties, contributions or distribution of profits. (*Ibid.*)

The burden upon one seeking to prove a parol partnership is proof by clear and convincing evidence—a standard which, however, applies only in the trial forum. Appellate review is limited to determining whether substantial evidence supports the trial court or agency's conclusions. (*Smalley, supra,* p. 839; *Crail* v. *Blakely* (1973) 8 Cal.3d 744, 750 [106 Cal.Rptr. 187, 505 P.2d 1027].)

Here, the totality of circumstances tends strongly to support the Board's conclusion of a parol partnership. The record shows without contradiction that the applicants regarded themselves as partners, conducted their business jointly, and distributed profits in proportion to their ownership interests. Indeed, the record shows that Rellim logged all of the subject lands in accordance with the overall needs of the enterprise, and without regard for boundary lines between separate parcels.

Certainly we are bound to say under these circumstances that substantial evidence supports the Board's conclusion that the applicants operated as a partnership.

A more difficult question arises, however, when we come to consider the Board's further finding that the applicants owned the land not as individuals but as members of the partnership. Implicit in this statement is the notion that owning "as a member" means owning for partnership use.

The "same legal ownership" provision of rule 41, on its face appears to require that the lands be owned by the partnership entity itself, which is not the case here. Title to land *may*, of course, be held by the entity itself (Corp. Code, § 15008, subd. (3)), but it is not required that real estate stand in the partnership name to be considered partnership property. (*Perelli-Minetti* v. *Lawson, supra,* 205 Cal. at p. 648.)

Once again, it is the intent of the partners which must govern, provided it can be determined. (*Sneed* v. *Kanelos* (1957) 150 Cal.App.2d 684, 688-689 [310 P.2d 706]; *Parelli-Minetti, supra.*)

Here such intention is difficult to discern. No partnership tax returns were filed for the tax years in question. The land at issue was of course bought not jointly but severally, at different times, by the various applicants. What occurred, we think, is that by implicit understanding the partners made common *use* of the property which was the heart of their common enterprise. And while use is not ownership, here the use of the property, though it produced different benefits and profits for various partners, was at their common desire and direction. Under similar circumstances, such a use has been held to constitute a trust by the holders of the legal title for the benefit of the partnership. (*Bastjan* v. *Bastjan* (1932) 215 Cal. 662 [12 P.2d 627]; *Swarthout* v. *Gentry* (1943) 62 Cal.App.2d 68, 79 [144 P.2d 38].)

The cases cited to the contrary by petitioner do not obviate our conclusion. In *Ellis* v. *Mihelis* (1963) 60 Cal.2d 206 [32 Cal.Rptr. 415, 384 P.2d 7], our Supreme Court agreed that two brothers were partners, but held that the record failed to support the finding that the ranches they owned were partnership assets, because the lands were acquired at a time when no partnership existed, and there was no showing that they were acquired for future partnership use. In the case at bench, however, the lands in question were expressly purchased for use in the common enterprise, and there is no contention that the enterprise did not exist when the acquisition was made.

In *People* ex rel. *Dept. Public Works* v. *Dickinson* (1964) 230 Cal.App.2d 932 [41 Cal.Rptr. 427], two men operating a wrecking company individually owned the two parcels of land which they leased to a partnership for its use. The land was condemned for a highway, and the question of severance damages turned upon whether the parcels were separate. In affirming the trial court's finding of separateness, the Court of Appeal focused on the lack of contiguity, the parcels being 500 feet apart. The court also found that unity of title was not created by the existence of a partnership agreement between the parties. The lease was considered as evidence that the parcels were individually owned, since leasing land to an entity is an acknowledgement that the entity does not own it. Here, however, testimony and documentary evidence show an intent that the land belong to the entity. Moreover, "unity of title" in the

context of severance damages is not a persuasive analogy to the "same legal ownership" question before us.

■ Record title is, of course, neither conclusive evidence of legal title nor a synonym for ownership. For assessment purposes, it is merely a guide; in the absence of contrary conclusive information it justifies assessment to the record owner. (Rev. & Tax. Code, § 611; cf. Ehrman & Flavin, Taxing Cal. Property, p. 191.)

Where, however, the Legislature ignores the language of record ownership, which, of course, it could very well have employed, in favor of the phrase "*legal* ownership," we must be guided, not by a desire to promote ease of administration as plaintiff contends, but by settled rules of statutory interpretation.

As earlier observed, the scope of our inquiry is limited first, to determining whether, as a factual matter, the Board's conclusion that the applicants herein owned the subject tracts as a partnership is supported by substantial evidence. For reasons already stated we think that it is. We also conclude as a matter of law that, given the existence of required use and contiguity factors, the Board's finding of a partnership justified invoking unit valuation under the rule 41 requirement that the lands so valued possess the "same legal ownership."

Having so decided, we find it unnecessary to consider the correctness of the Board's conclusion that the maximum value of the subject lands could be realized by unit sale.

Affirmed.

Racanelli, P. J., and Elkington, J., concurred.