OPINION OF THE COURT
Nicholas A. Clemente, J.
In January, 1979, Frances Impastato first took her 11-year-old son Vincent who was suffering from a sore throat to Dr. Paul Citrin at his office located at 334 Knickerbocker Avenue and known as the Doctors and Dentists Health Building. One-half year later, on June 19, 1979, when Vincent became ill his mother again took him to see Dr. Citrin. Dr. Citrin was not there and instead, Dr. Mehta examined Vincent. She diagnosed Vincent’s condition as acute gastritis. In fact Vincent was suffering from appendicitis and died on June 21,1979 from a perforated appendix.
*787 Frances Impastato as administratrix of her son’s estate and in her individual capacity commenced this action for malpractice, inter alia, against Paul Citrin and J. M. Mehta. The complaint alleges that Mehta was “an agent, servant and/or employee” of Citrin and that Citrin was “an agent, servant and/or employee” of J&P Knickerbocker Corporation.[1]
Subsequently, by notice of cross motion, Citrin moved to dismiss the action against him on the grounds that he never rendered any medical services to Vincent and that Mehta was not in his employ. Special Term, Part I (Aronin, J.), in an order dated July 1, 1982 granted Citrin’s application to the extent of directing an evidentiary hearing which was referred to me on October 7, 1982. The purpose of the hearing was to determine whether Citrin was a proper party defendant.
At the hearing Citrin, while denying that he employed Mehta testified that prior to June, 1979 they had made an oral agreement for her to perform medical services in his office while he was away on vacation. Their compensation arrangement provided that 30% of all fees collected from insured patients (such as Medicaid, Blue Cross and Blue Shield) were to be paid to Citrin. He characterized such amounts as rent and administrative services. Fees from private patients were not divided and were to be kept entirely by Mehta. While covering Citrin’s office Mehta had authority to use the Doctors and Dentists Health Building prescription pads, and full use of equipment and appropriate staff.
Citrin conceded that the notes made by Mehta in regard to Vincent’s visit were placed in the folder which Citrin maintained for Vincent and remained with him as part of his records.
Frances Impastato testified that on June 19, 1979 the receptionist at the Doctors and Dentists Health Building gave her Vincent’s file and said, “Go in the back, give it to the nurse and the doctor will see you”. Mrs. Impastato, while expecting Citrin to be examining her son, quickly *788 became aware that Mehta was conducting the examination. Mrs. Impastato inquired as to Citrin’s whereabouts and was informed that he was on vacation. She paid Mehta $15 in cash and obtained a receipt on a prescription pad bearing the letterhead Doctors and Dentists Health Building.
Plaintiff contends that Citrin and Mehta’s relationship rises to the level of employment or partnership and that the former is liable for the acts of the latter.[2] She contends further that if there is not an actual partnership, Citrin should be estopped from denying the existence of a partnership or agency relationship. In this regard she argues that Citrin caused her to believe that Mehta was his agent and should have realized that his conduct created the belief that Mehta was acting as his agent.
Citrin, on the other hand, contends that a physician is not liable for the negligence of another independent physician who substitutes for him while he is temporarily absent.
It is undisputed that a referral of a patient by one doctor to another absent partnership, employment, or agency, does not impose liability for any malpractice on the referring doctor (61 Am Jur 2d, Physicians, Surgeons & Other Healers, § 167).
Whether Citrin is liable, therefore, resolves itself into whether plaintiff can establish that Citrin and Mehta were partners, principal and agent, or master and servant.
Initially it is to be noted that the imposition of a vicarious liability runs counter to the common law in this State. That is, ordinarily a person injured by the negligence of another is required to seek his remedy solely against the person actually causing the injury. The creation of vicarious liability in situations of copartners or master and servant constitutes an exception to that general rule. (Connell v Hayden, 83 AD2d 30, 49-50.)
Plaintiff in arguing for a partnership relation relies on subdivision 4 of section 11 of the Partnership Law which provides in part that “The receipt by a person of a share of *789 the profits of a business is prima facie evidence that he is a partner in the business”. Plaintiff asserts that Mehta’s portion of the insurance proceeds constituted her share of the profits and that is prima facie evidence of a partnership. In my view, however, this is counterbalanced by the other evidence herein.
The indicia of the existence of a partnership relationship among several individuals are a pro rata sharing of profits and losses of the enterprise and the pro rata contribution to the capital of the enterprise (whether it be property, skill or knowledge), the joint ownership and interest in the enterprises’ assets by all investors, the intention of the parties that they be partners and the partners all having some voice in the management of the enterprise. (Tenney v Insurance Co. of North Amer., 409 F Supp 746, 748-749; Ramirez v Goldberg, 82 AD2d 850, 852.) A person, however, who has no proprietary interest in a business except to share profits as compensation for services is not a partner or joint venturer (Chase & Co. v White, Weld & Co., 311 F Supp 1253, 1259; Moscatelli v Nordstrom, 40 AD2d 903). It has been frequently held that an indispensable requirement of a partnership is “a mutual promise or undertaking of the parties to share in the profits of the business and submit to the burden of making good the losses” (Matter of Steinbeck v Gerosa, 4 NY2d 302, 317; Matter of Wells, 36 AD2d 471, 475, affd 29 NY2d 931; Matter of Bennett v Pierce Inds., 28 AD2d 944).
It is readily apparent at bar that Mehta neither had the obligation to bear the burden of any losses that Citrin’s practice might suffer nor had she control over the business -or physical aspect of his office and practice. Thus, Mehta cannot be found to be either Citrin’s partner or joint venturer (which is a relationship similar to partnership but for a more limited period of time and more limited . purposes [Prosser, Torts (4th ed), § 72]). It is clear also that there is no partnership by estoppel since Citrin did not represent or hold out Mehta as his partner. (See Partnership Law, § 27.)
The emergent issue, therefore, is whether Citrin and Mehta were principal and agent, master and servant and/ or employer and employee (which is an outgrowth of the *790 older term master and servant and may be used interchangeably [53 Am Jur 2d, Master & Servant, § 1]) or whether Mehta was merely an independent contractor visa-vis Citrin.
Although the words agent and servant are not wholly synonymous[3] there is no fundamental distinction between the liability of a principal for the tort of an agent and the liability of a master for the tort of a servant. (People v Izzo, 96 Misc 2d 634, 636; 2 NY Jur, Agency, § 3; 3 NY Jur 2d, Agency, § 253.)
Hence in deciding whether a master-servant or employer-employee relationship exists significant factors are whether the employer has the right to control the manner in which the work is performed, the method of payment, who furnishes equipment and the right to fire (Matter of Pelow v Sork Enterprises, 39 AD2d 494, 496). Avis Rent A Car System v United States (503 F2d 423, 429) a case dealing with whether an employer-employee relationship existed for purposes of deciding who was liable for certain taxes set forth a seven prong test on the issue as follows:
“1) If the person receiving the benefit of a service has the right to control the manner in which the service is performed, the person rendering the service may be an employee.
“2) If a person rendering a service has a substantial investment in his own tools or equipment, he may be an independent contractor.
“3) If a person performing a service undertakes a substantial cost, say by employing and paying his own laborers, he may be an independent contractor.
“4) If a person performing a service has an opportunity to profit depending on his management skill, he may be an independent contractor.
“5) If a service rendered requires a special skill, the person rendering it may be an independent contractor.
*791 “6) If the relationship between a person rendering a service and the person receiving it is permanent, it may be an employment relationship.
“7) If a person rendering a service works in the course of the recipient’s business, rather than in some ancillary capacity, he may be an employee.”
Applying these criteria to the present case, it is evident that Mehta must be deemed an employee.
While control appears to be a central factor in determining whether the relationship exists (see Matter of Villa Maria Inst. of Music [Ross], 54 NY2d 691) it has been recognized that the relationship may exist notwithstanding its absence where the nature of the work (such as a doctor treating a patient) makes close supervision impossible (cf. Matter of Friend [Audits & Surveys Co. —Ross], 64 AD2d 800). Examining the criteria further Mehta had no tools and equipment of her own but instead used Citrin’s even to the extent of using the prescription pads he furnished. In addition, by the very nature of the arrangement she was obliged to use Citrin’s receptionist and nurse. Her patients were to be and to remain Citrin’s patients. This is evident by the fact that she made notations in the files which Citrin maintained for his patients. Another indication of her employee status is the fact, that she could be dismissed at any time. Thus it follows that if Citrin had been present he retained the legal right to supervise what occurred in his office.
It is true that the work involved a special skill but neither party questions the legal efficacy of a doctor being an employee. Nor does the fact that Mehta kept the cash receipts make her an independent contractor. The evidence clearly indicates that the bulk of the compensation was obtained from insurance type proceeds and thus the failure to divide the cash was obviously either a way to avoid disagreements or provide additional compensation.
In Moulton v Huckleberry (150 Ore 538, 552), where, as here, a doctor left for vacation and a substitute doctor provided medical services, the court sustained vicarious liability stating: “Taking into consideration all of the circumstances to which we have referred tending to show the relation of master and servant, that is, the mode of pay- *792 merit, use of the master’s premises, materials, equipment, appliances and nurse, the contract made between the parties, the master’s right to terminate the employment at any time, Dr. Huckleberry’s right to direct how the work should be performed, if he had been present or had the opportunity, the fact that the servant or employee was not employed to do a specific piece of work but was employed generally to do all the work of the master, and the other circumstances existing, they constitute sufficient evidence that Dr. Shininger was the employee of Dr. Huckleberry, and that Dr. Huckleberry was responsible for the conduct and improper treatment of plaintiff.”
Citrin in opposing the imposition of liability relies on Graddy v New York Med. Coll. (19 AD2d 426). Superficially Graddy would appear controlling but closer analysis indicates otherwise.
In Graddy (supra), a Dr. Street and a Dr. Bell shared an office which they used at different periods of the day. They shared the use of a secretary and equipment and supplies.
Dr. Street during April, 1959 treated a patient on two occasions for complaints concerning his nose and throat. Dr. Street advised against surgery. When the patient returned to the office on May 11 he was told that Dr. Street was ill and that Dr. Bell, who was then in the office was caring for his patients. Plaintiff related the same symptoms he had previously given Dr. Street and Dr. Bell advised surgery which he then undertook to perform. The trial court held Dr. Street liable for Dr. Bell’s malpractice committed during the surgery pointing to his financial interest in the fees paid for services performed by Dr. Bell.
In reversing, the Appellate Division stated the following (19 AD2d, at p 430):
“Although the rule of liability is broadening out in this area, we think it ought not be extended to rest on a situation where there is neither a legal nor an actual control of the treating physician by the other physician and the relationship between them upon which responsibility is sought to be imputed turns upon a shared office and an agreement to service each other’s patients for a shared fee.
*793 “This is something less, and quite different from, a relationship of master and servant or agency upon which vicarious liability has thus far rested. The implications of such an enlarged liability would tend to discourage a physician from arranging to have another care for his patients on his illness or absence and thus curtail the availability of medical service.
“On the whole this extension of liability should not be made on the record now before us. If splitting of fees in the absence of active participation in the service or of a written partnership agreement was professionally irregular (Education Law, § 6514) that should be dealt with rather by appropriate disciplinary action than by an extension of vicarious liability. Thus, in our view, the judgment against appellant Street should not stand.”
Unlike Graddy (supra) in the instant case there is no question that Citrin had legal control of what occurred in his office. Moreover, in Graddy both Dr. Street and Dr. Bell had their own independent medical practices. Thus it would have been manifestly unreasonable to hold Dr. Street responsible for the surgery which he had in fact advised should not be performed.
Unlike Graddy (supra) we have a physician operating a corporate-type medical services business who places a substitute in his practice in order to temporarily service his patients. The substitute physician unlike Dr. Bell in Graddy had no practice of her own.
In sum, when Dr. Citrin turns over his office, his equipment, his staff, his stationery and his patient files to another doctor for the latter to serve his patients only while he goes on vacation and the latter turns over a portion of the fees collected during such period to Dr. Citrin the inescapable conclusion is that Dr. Citrin should be vicariously liable for the malpractice of the physician substituting for him. The law imposes vicarious liability on a master for the acts of a servant because it deems the latter to be standing in the place and acting for the former. (Connell v Hayden, 83 AD2d 30, 50, supra.) Dr. Mehta was certainly acting for Dr. Citrin.
Accordingly, the cross motion is denied.

. On June 2, 1982 the action against J&P Knickerbocker Corporation was discontinued with prejudice, upon the consent of plaintiff. Dr. Citrin was president of J&P Knickerbocker Corporation which did business at 334 Knickerbocker Avenue under the name Doctors and Dentists Health Building.

. While the complaint is silent on the matter of partnership plaintiff strenuously argues in her brief submitted on this motion that Citrin and Mehta were partners.

. While both embody the concept of a service to another under an expressed or implied agreement the servant simply acts for the principal usually according to his directions and without much discretion.