**Samuel SHAW and Lola Shaw, Plaintiffs,**

v.

**DELTA AIRLINES, INC., a Delaware corporation; SkyWest Airlines, Inc., a Utah corporation; and Does I–XXV, Defendants.**

No. CV–N–91–539–ECR.

United States District Court, D. Nevada.

May 28, 1992.

Robert E. Dickey, Jr., Clark & Dickey, Ltd., Reno, Nev., for plaintiffs.

Frederic R. Starich, Reno, Nev., and Nancy L. Pearl and L. Richard Musat, Treece, Alfrey & Musat, P.C., Denver, Colo., for defendants.

## ORDER

EDWARD C. REED, Jr., Senior District Judge.

Defendant Delta Airlines, Inc. ("Delta") filed its motion for summary judgment on March 23, 1992 (document # 14). This action concerns the crash of an airplane operated by Defendant SkyWest Airlines, Inc. ("SkyWest"). Plaintiff Samuel Shaw was on-board SkyWest flight 5855 scheduled to fly from Salt Lake City, Utah to Elko, Nevada on January 15, 1990. The flight crashed just miles from the Elko airport, and Plaintiff Samuel Shaw suffered serious personal injuries as a result.

Delta argues that the Shaws have stated no claims against Delta. Delta claims that, legally, SkyWest is not Delta's agent, partner, or joint venturer. Furthermore, Delta points to its agreement with SkyWest and argues that Delta and SkyWest are engaged in a simple contractual relationship in which Delta acts only as the ticketing and marketing agent for SkyWest. Since each party is an independent contractor, argues Delta, only the company on whose plane the accident occurred can be liable to the Plaintiffs.

Plaintiffs concede that SkyWest is not a subsidiary or division of Delta. However, Plaintiffs argue that certain facts sustain the conclusion that SkyWest was Delta's agent for the purposes of carrying passengers on less-travelled "commuter" routes that Delta does not itself fly. They present evidence that indicates that SkyWest uses Delta trademarks and insignia, the two companies are often mentioned together by Delta in national print advertisements and airline industry schedules, and that Delta has control over SkyWest routes and timetables. Thus, Plaintiffs claim that Delta presents the image to the public that SkyWest is part of Delta, or at the least Delta's agent. As such, Plaintiffs argue, a jury could hold Delta liable on an apparent authority theory.

## LEGAL ANALYSIS

The court can only conceive of three legal relationships that might give rise to vicarious liability under facts such as the

ones involved in this case.[1] If Delta is liable to Plaintiffs, it must be because Delta was SkyWest's general partner, Delta was SkyWest's joint venturer, or because SkyWest was Delta's agent with apparent authority to carry passengers on behalf of Delta. The court will consider each argument individually below.

## I. *Summary Judgment Standard*

When faced with a defendant's motion for summary judgment, the facts before the court "must be viewed in the light most favorable to the [nonmoving] party," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The court's role is simply to assess whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511. If the nonmoving party is unable to meet this burden, the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c).

## II. *Possible Legal Relationships Between Delta and SkyWest*[2]

### A. Parthol Partnership

■ Since Delta and SkyWest were parties to a contract under which both would presumably make a profit from their combined efforts, one might argue that these two parties were engaged in a partnership. The position of the vast majority of states is that if two or more parties intend for their relationship to result in a partnership, the law will treat the relationship as a partnership, regardless of whether the parties themselves call the relationship a partnership or intend the legal consequences that flow from that label.[3]

■ However, the authorities also clearly indicate that there is no specific test to determine the existence of a partnership. An express written agreement to form a partnership is not required. *Gosman v. Gosman*, 271 Md. 514, 519, 318 A.2d 821, 824 (1974). The trier of fact must look to the conduct of the parties and all the circumstances surrounding their relationship and transactions. *Cochran v. Board of Supervisors of Del Norte County*, 85 Cal. App.3d 75, 81, 149 Cal.Rptr. 304, 307 (1978); *Presutti v. Presutti*, 270 Md. 193, 197–98, 310 A.2d 791, 794 (1973). The key factor is not the subjective intent of the parties to form a partnership, but instead the intent of the parties to do the things that the law will consider a partnership. *In re Western World Funding, Inc.*, 52 B.R. 743, 777 (D.Nev.1985). It is immaterial that the parties do not call their relationship, or believe it to be, a partnership, especially where the rights of third parties are concerned. *Id.*

---

1. Since SkyWest is not a subsidiary or division of Delta, there can be no corporate relationship. Also, it is obvious that the law of limited partnership does not apply here. Finally, there is no evidence of any contractual term giving rise to liability, such as an indemnity or insurance agreement.

2. Since this is a diversity suit and the accident took place in Nevada, Nevada law will apply. Where Nevada has not addressed an issue, the court has applied other persuasive authorities that the Nevada Supreme court would likely adopt if faced with that issue.

3. See *Hollis v. Rock Creek Pack Station*, 594 F.Supp. 156, 160 (D.Nev.1984); *Montana Bank of Red Lodge, N.A. v. Lightfield*, 237 Mont. 41, 45, 771 P.2d 571, 574 (1989); *Southern States, Inc. v. Southwest Missouri Bank*, 714 S.W.2d 956, 959 (Mo.App.1986); *In re Estate of Wells*, 221 Neb. 741, 380 N.W.2d 615, 617 (1986); *Milberg Factors, Inc. v. Hurwitz–Nordlicht Joint Venture*, 676 S.W.2d 613, 616 (Tex.App.1984); *Impastato v. De Girolamo*, 117 Misc.2d 786, 789, 459 N.Y.S.2d 512, 514 (1983); *Hill v. Oland*, 61 Or.App. 85, 89, 655 P.2d 1088, 1090 (1982); *Murphy v. Stevens*, 645 P.2d 82, 85 (Wyo.1982); *Allen v. Amber Manor Apartments Partnership*, 95 Ill.App.3d 541, 549, 51 Ill.Dec. 26, 32, 420 N.E.2d 440, 446 (1981); *Dang v. F and S Land Development Corp.*, 62 Haw. 583, 589, 618 P.2d 276, 280 (1980); *Matter of Pentrack's Estate*, 486 Pa. 237, 241, 405 A.2d 879, 881 (1979); *Cochran v. Board of Supervisors of Del Norte County*, 85 Cal.App.3d 75, 81, 149 Cal.Rptr. 304, 307 (1978); *LeZontier v. Shock*, 78 Mich.App. 324, 260 N.W.2d 85, 89 (1977); *Gammill v. Gammill*, 256 Ark. 671, 510 S.W.2d 66, 68 (1974); *Gosman v. Gosman*, 271 Md. 514, 519, 318 A.2d 821, 824 (1974); *Myrland v. Myrland*, 19 Ariz.App. 498, 502, 508 P.2d 757, 761 (1973).

The law provides a laundry list of factors to look at in deciding whether or not parties intended to form a partnership. Nevada has adopted the Uniform Partnership Act ("UPA"). NRS 87.070 [UPA § 7] is entitled "Rules for determining existence of partnership." According to this section, "receipt by a person of a share of profits of a business is prima facie evidence that he is a partner in the business...."

On its face, this section might seem to imply that any contractual agreement under which both parties receive profits is a partnership. However, most jurisdictions find that mere participation in profits does not create a partnership unless the partners also share losses. *Johnson v. Chilcott*, 599 F.Supp. 224, 226 (D.Colo.1984); *U.S. for Use of Altman v. Young Lumber Co.*, 376 F.Supp. 1290, 1297 (D.S.C.1974); *Scharf v. Crosby*, 120 A.D.2d 971, 972, 502 N.Y.S.2d 891, 892 (1986). Also, most authorities require that each partner have some degree and right of control over the business. See NRS 87.180(5); *Western World*, 52 B.R. at 777; *Thomas v. Price*, 718 F.Supp. 598, 605–06 (S.D.Tex.1989); *Impastato v. De Girolamo*, 117 Misc.2d 786, 789, 459 N.Y.S.2d 512, 514 (1983). "Although the sharing of profits and losses is prima facie evidence of a partnership, the issue of control is the more important criterion in determining the existence of a partnership." *Thomas*, 718 F.Supp. at 605–06 (footnotes omitted).

■ In the instant case, the agreement between Delta and SkyWest does not indicate any desire to engage in a business as risk-sharing partners with joint-control over the enterprise. It is true that both parties expected to make a profit from the enterprise, however, a person "who has no proprietary interest in a business except to share profits as compensation for services is not a partner or joint venturer." *Impastato*, 117 Misc.2d at 789, 459 N.Y.S.2d 512. Even where one party exercises some degree of control over the other, and their joint fortunes depend upon the same business factors, a partnership does not necessarily exist. *Coca–Cola Bottling Co. of Elizabethtown, Inc. v. Coca–Cola Co.*, 696 F.Supp. 57, 74 (D.Del.1988).

In this case, SkyWest certainly did not have joint control over the operations of Delta. Nor did SkyWest directly participate in the profits or losses of the Delta corporation. The "Delta Connection" agreement might be characterized as simply a business referral arrangement, whereby Delta benefits through its ability to issue tickets to connecting passengers and SkyWest benefits through the payments it receives on the tickets of passengers that Delta has sent to it. The court concludes that, under the above legal standards, no reasonable jury could conclude that Delta and SkyWest were general partners.

### B. Joint Venture

■ In Nevada, "[a] joint venture is a contractual relationship in the nature of an informal partnership wherein two or more persons conduct some business or enterprise, agreeing to share jointly, or in proportion to capital contributed, in profits and losses." *Bruttomesso v. Las Vegas Metropolitan Police*, 95 Nev. 151, 154, 591 P.2d 254, 256 (1979). It is usually entered into for a limited business objective and typically for a brief period of time. *Hook v. Giuricich*, 108 Nev. 29, 823 P.2d 294, 296 (1992).

■ The label "joint venture" clearly does not apply in this case. Delta and SkyWest did not agree to a short-term business deal in which they proposed to jointly share in profits or losses. Nor did either party invest capital in a joint business deal. The court's reasoning from its partnership analysis applies equally as well here: Delta and SkyWest are contract parties to a business referral agreement. There is no joint venture under Nevada law.

### C. Agency

■ Plaintiffs' major argument is that SkyWest was the agent of Delta for purposes of carrying passengers like Mr. Shaw. Delta argues that although it may be SkyWest's agent for ticketing, marketing, and scheduling, SkyWest is not *its*

agent for any purpose. Since there is no explicit agency agreement, Plaintiffs argue instead that the law may deem SkyWest the agent of Delta on an apparent authority theory. They claim that Delta has used advertising and marketing strategies aimed at creating the impression in the minds of the travelling public that SkyWest is somehow a part of Delta.

■ Delta makes much of the fact that the Delta Connection agreement expressly states that no employee, independent contractor, or agent of either company shall be deemed to be an employee, independent contractor, or agent of the other. However, it is clear that a clause negating agency in a written contract is not controlling. *Ludolph v. Bechtel Associates Professional Corp., D.C.,* 542 F.Supp. 630, 633 (D.D.C.1982); *Drummond v. Hilton Hotel Corp.,* 501 F.Supp. 29, 31 (E.D.Pa.1980); *RHO Co., Inc. v. Dep't of Revenue,* 113 Wash.2d 561, 782 P.2d 986, 991 (1989); *Largey v. Intrastate Radiotelephone, Inc.,* 136 Cal.App.3d 660, 666, 186 Cal.Rptr. 520, 523 (1982). Thus, at trial the fact finder must examine the facts surrounding the relationship to see if a true principal-agent relationship existed.[4]

■ A principal is bound by the acts of its agent while acting in the course of his or her employment, and a principal is liable for those acts within the scope of the agent's authority. *Nevada Nat'l Bank v. Gold Star Meat Co.,* 89 Nev. 427, 429, 514 P.2d 651, 653 (1973). An agent's authority may be express, implied, or apparent. *Dixon v. Thatcher,* 103 Nev. 414, 417, 742 P.2d 1029, 1031 (1987). In Nevada, "apparent authority" is that authority which a principal holds its agent out as possessing, or permits the agent to exercise or to represent him- or herself as possessing, under such circumstances as to estop the principal from denying its existence. *Dixon,* 103 Nev. at 417, 742 P.2d at 1031; *Myers v. Jones,* 99 Nev. 91, 93, 657 P.2d 1163, 1164

(1983); *Gold Star Meat,* 89 Nev. at 429, 514 P.2d at 653. The existence or nonexistence of an agency relationship is a question of fact for the jury. *Northern Nevada Mobile Home Brokers v. Penrod,* 96 Nev. 394, 397, 610 P.2d 724, 726 (1980).

Thus, the trier of fact in this case must engage in a two-step analysis. First, the jury must decide whether or not there existed *any* principal-agent relationship between Delta and SkyWest. Second, if the answer to the first question is yes, the jury must next determine if SkyWest had the apparent authority to carry passengers for Delta. The answer to this second question will depend upon whether or not Delta created the impression in the minds of travellers like Mr. Shaw that SkyWest was its carrier-agent, not whether or not Delta and/or SkyWest actually intended such a relationship to exist or intended passengers to receive such an impression.

As to the first question, taking all the evidence in the light most favorable to the Plaintiffs, a reasonable jury could conclude that SkyWest was a Delta agent of some kind. If the jury were to find as a matter of fact that Delta fostered the impression in travellers' minds that SkyWest was its agent (or subsidiary or partner) then that would be enough to support the conclusion that there was a principal-agent relationship between the two airlines, whether or not Delta intended an actual legal agency. Under such an analysis, the first question collapses into the second and the only remaining relevant inquiry focuses on the apparent authority issue.

Also, this first question of whether an agency exists may be satisfied by *any* finding of agency. Once an agency is found to exist, the important question is actually one of scope. For example, a principal-agent relationship exists between a home seller and his or her real estate agent. However, if the agent took the initiative of selling the home owner's car, the agent would likely be exceeding the scope of the

---

**4.** "In this regard, agency is a legal concept that depends on the manifest conduct of the parties; it 'does not depend upon the intent of the parties to create it, nor their belief that they have done so.... [A]n agency exists although the parties did not call it agency and did not intend the legal consequences of the relation to follow.'" *RHO Co.,* 782 P.2d at 991 (quoting Restatement (Second) of Agency § 1, *comment b* ).

agent's authority, be it express, implied, or apparent. In this case, the jury could easily find that SkyWest was Delta's agent for *something,* for example, a ticketing agent, a booking agent, etc. Almost all contractual relationships will create agencies of one kind or another between the parties, no matter how small or limited in scope. Once the trier of fact has made that determination, the true issue in any agency case becomes the scope of the agent's authority.

After deciding either that the questions of agency and its scope are one and the same, or that an agency of some kind exists, the jury would then consider the apparent authority issue. Put in simple terms, the question here will be whether Delta represented to passengers that SkyWest possessed more authority to act as its agent than SkyWest actually did possess.

Plaintiffs present uncontroverted evidence that Delta has some measure of control over its relationship with SkyWest. Delta possesses the right to control the printing and distribution of SkyWest timetables as SkyWest's marketing agent. Delta decides where and how this information gets published and may print SkyWest flight information as Delta connecting flights in appropriate airline guides.[5] Delta also has the power to assign the flight numbers to SkyWest flights.

Plaintiffs also present evidence that tends to show that Delta's actions have effectively managed to equate SkyWest with Delta in the minds of the travelling public. Delta publishes SkyWest flight information in Delta timetables and refers to SkyWest's service as the "Delta Connection." The two names (Delta and SkyWest) appear together in national advertising materials along with the same trademark the "Delta Connection." The agreement between Delta and SkyWest provides for the use of Delta slogans and insignia "to reflect the Delta Connection and the relationship between SkyWest and Delta." Advertising materials depict the Delta trademark (a red, white, and blue triangle) close to the SkyWest name and Delta includes SkyWest destination cities in its own list of Delta destinations. Delta issues SkyWest tickets on Delta ticket stock and provides Delta ticket stock to SkyWest for some of their ticketing needs.

This case is similar to apparent authority cases involving franchisors and franchisees.[6] In *Drexel v. Union Prescription Centers, Inc.,* 582 F.2d 781 (3d Cir.1978), the plaintiff, administratrix of a decedent's estate, sued a franchisor for the act of its franchisee in negligently causing decedent's death when it filled a prescription with the wrong drug. In reversing the district court's order granting summary judgment for the defendant, the circuit court ruled that material issues of fact remained on the apparent authority issue.

> Appellee's assertion that no representations of agency or authority were ever made is contradicted by appellant's evidence suggesting that in fact UPC [the franchisor], by *strictly controlling the manner in which the franchisee was perceived by the public, created an appearance of ownership and control purposefully designed to attract the patronage of the public.* ... The issue, we note, is not what agreements were entered into between UPC and [the franchisee] to establish a relationship other than agency, but rather what representations were actually made to the customers....

*Id.* at 795–96 (emphasis added).

Similarly, in *Gizzi v. Texaco, Inc.,* 437 F.2d 308 (3d Cir.1971), an automobile acci-

---

5. Although nothing prevents SkyWest from also publishing its own flight timetables.

6. The court acknowledges Delta's attempt to cite cases dealing directly with the liability of air carriers. Three of the cases, *Kapar v. Kuwait Airways Corp.,* 845 F.2d 1100 (D.C.Cir.1988), *Block v. Compagnie Nationale Air France,* 386 F.2d 323 (5th Cir.1967), and *Stanford v. Kuwait Airlines Corp.,* 705 F.Supp. 142 (S.D.N.Y.1989), address the definition of "carrier" under the Warsaw convention provisions dealing with the liability of international air carriers. The fourth case, *Stanford v. Kuwait Airways Corp.,* 648 F.Supp. 1158 (S.D.N.Y.1986), rejected a claim against an airline which acted merely as ticketing agent for another. In that case, there was no evidence of a direct agreement between the two airlines nor were the two airlines connected in the minds of the public in any way. None of the four cases directly address the issue of apparent authority.

dent victim sued Texaco for the negligent work performed by a mechanic at one of its franchisee's stations. Again, the court of appeals reversed a district court's grant of summary judgment in favor of the franchisor. Speaking to the issue of the creation of apparent authority, the Third Circuit stated the manifestations of the principal in creating such authority "may be made directly to the third person, or may be made to the community, by signs or advertising." *Id.* at 309 (citing Restatement (Second) of Agency §§ 8, 8B, & 27). The court went on to cite the usage of Texaco logos and the motto "trust your car to the man who wears the star" and the fact that Texaco engaged in significant nationwide advertising as evidence to support the plaintiff's theory of liability. *Id.* at 310.

These cases are not controlling, nor are they one-hundred percent analogous. However, they do accurately portray the issues that the trier of fact will faced in an apparent authority case such as this one.[7] Taking all evidence in the present record in the light most favorable to the plaintiffs, as the court must do on summary judgment, the court finds that there are material facts in dispute which must be resolved by the jury. Specifically, the jury must decide if SkyWest was the agent of Delta with the apparent authority to carry passengers for Delta.

IT IS, THEREFORE, HEREBY ORDERED that Defendant Delta's motion for summary judgment (document # 14) is DENIED.

---

7. Of course, other issues remain as well which may or may not help Delta. For example, the Plaintiffs must show that Mr. Shaw reasonably relied on the representations of Delta. *Gizzi,* 437 F.2d at 309. The court deals here solely with the standard on summary judgment.