■ IVAN KAUFMAN, Respondent, v KOUROS TORKAN et al., Appellants. [859 NYS2d 253]—

In an action, inter alia, to impose a constructive trust, the defendants appeal, as limited by their brief, from so much of an order of the Supreme Court, Nassau County (Brandveen, J.), entered June 28, 2007, as denied their motion for summary judgment dismissing the complaint, to cancel a notice of pendency, and for sanctions and an award of an attorney's fee pursuant to CPLR 6514 (c) and 22 NYCRR 130-1.1.

Ordered that the order is modified, on the law, by deleting the provisions thereof denying those branches of the defendants' motion which were for summary judgment dismissing the complaint and to cancel the notice of pendency and substituting therefor provisions granting those branches of the motion; as so modified, the order is affirmed insofar as appealed from; and it is further,

Ordered that the Nassau County Clerk is directed to cancel the notice of pendency dated November 18, 2004, indexed against Section 1, Block 144, Lots 24 and 32; and it is further,

Ordered that one bill of costs is awarded to the defendants.

In late 2003 Sylvia Riese died and her waterfront property (hereinafter the subject property) was placed on the market for sale. The plaintiff Ivan Kaufman who lived just behind the subject property, placed a bid on the subject property in the sum of approximately $6.5 million. At about the same time, the defendant Kouros Torkan (hereinafter Torkan) also placed a $6.5 million bid on the subject property. After learning about Torkan's bid, Kaufman asked, through an intermediary, for Torkan to withdraw his bid on the subject property and to refrain from bidding on it in the future. Subsequently, a meeting was arranged between several business people, including Torkan and Kaufman. According to Kaufman, at the meeting, he agreed to provide Torkan with 90% of the financing he needed to purchase a commercial property in Chelsea, which Torkan intended to convert into a residential building (hereinafter the Chelsea property). In return, Kaufman would receive the first mortgage, which Torkan would repay at a prevailing interest rate, a 25% "equity kicker" in the Chelsea property, and Torkan's promise to withdraw the bid he had placed on the subject property and to not place any bids on it in the future. By contrast, according to Torkan, the discussion at the meeting centered around the purchase and development of a property in Belize, which he characterized as a "complete waste of time." He denied that there was any agreement reached between him

or Kaufman, or that they even discussed the subject property or the Chelsea property. Nevertheless, Torkan acknowledged that, at some point, he withdrew his bid on the subject property. According to Kaufman, sometime between April and August of 2004, Torkan's bid on the Chelsea property was rejected. In October 2004 Torkan and his wife, the defendant Karen Torkan (hereinafter together the Torkans), purchased the subject property, going from contract to closing on a single day. As a result, Kaufman commenced this action asserting causes of action sounding in breach of a fiduciary duty under a joint venture agreement and fraud, for which he sought the imposition of a constructive trust, and also filed a notice of pendency on the subject property. After discovery concluded, the Torkans moved for summary judgment dismissing the complaint, to cancel the notice of pendency filed by the plaintiff, and for an award of sanctions and an attorney's fee pursuant to CPLR 6514 (c) and 22 NYCRR 130-1.1. The Supreme Court denied the motion.

A joint venture is "an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge" (*Williams v Forbes,* 175 AD2d 125, 126 [1991] [internal quotation marks omitted]). "The essential elements of a joint venture are an agreement manifesting the intent of the parties to be associated as joint venturers, a contribution by the coventurers to the joint undertaking (i.e., a combination of property, financial resources, effort, skill or knowledge), some degree of joint proprietorship and control over the enterprise; and a provision for the sharing of profits and losses" (*Tilden of N.J. v Regency Leasing Sys.,* 230 AD2d 784, 785-786 [1996] [internal quotation marks omitted]). Here, Kaufman's claim of a breach of fiduciary duty under a joint venture agreement must fail as a matter of law, since there is no provision for the sharing of losses (*see Matter of Steinbeck v Gerosa,* 4 NY2d 302, 317 [1958]; *Latture v Smith,* 1 AD3d 408 [2003]). The nature of any relationship between Kaufman and Torkan was that of lender and borrower, with the former at no risk of suffering any losses (*see Rocchio v Biondi,* 40 AD3d 615, 616-617 [2007]; *Wiener v Lazard Freres & Co.,* 241 AD2d 114, 121 [1998]; *Tilden of N.J. v Regency Leasing Sys.,* 230 AD2d at 785; *see also Bank Leumi Trust Co. of N.Y. v Block 3102 Corp.,* 180 AD2d 588, 589 [1992]). Moreover, as a lender who would play no role in developing the Chelsea property, Kaufman lacked control over the purported enterprise (*see Gold Mech. Contrs. v Lloyds Bank P.L.C.,* 197 AD2d 384 [1993]). Consequently, the Supreme Court should have granted that branch of the Torkans' motion which was for summary judgment dismissing the cause of action alleging breach of a fiduciary duty under a joint venture agreement.

In order to recover damages for fraud, the fraud alleged cannot relate to a breach of contract (see *Ross v DeLorenzo,* 28 AD3d 631, 636 [2006]; *Weitz v Smith,* 231 AD2d 518 [1996]). Here, Torkan's alleged misrepresentation of his intent to withdraw his bid on the subject property and refrain from bidding on it in the future was not collateral or extraneous to the terms of the parties' supposed joint venture agreement (see *Sforza v Health Ins. Plan of Greater N.Y.,* 210 AD2d 214 [1994]; *Americana Petroleum Corp. v Northville Indus. Corp.,* 200 AD2d 646, 648 [1994]; *McKernin v Fanny Farmer Candy Shops,* 176 AD2d 233, 234 [1991]; *Hoydal v City of New York,* 154 AD2d 345, 346 [1989]). Moreover, there is no evidence that Kaufman suffered any out-of-pocket losses as a result of the alleged fraud (see *Lama Holding Co. v Smith Barney,* 88 NY2d 413, 421 [1996]; *Sangimino v Sangimino,* 176 AD2d 872, 874 [1991]; *Cayuga Harvester v Allis-Chalmers Corp.,* 95 AD2d 5, 23 n 8 [1983]; *Clearview Concrete Prods. Corp. v S. Charles Gherardi, Inc.,* 88 AD2d 461, 468 [1982]). Consequently, the Supreme Court also should have granted that branch of the Torkans' motion which was for summary judgment dismissing the cause of action alleging fraud.

In any event, even if the Torkans were not entitled to summary judgment dismissing the causes of action alleging breach of a fiduciary duty under a joint venture agreement and fraud, under these circumstances, Kaufman would not be entitled to the imposition of a constructive trust since, as only a potential buyer, he had no interest in the subject property at the time he allegedly received Torkan's promise (see *Schwab v Denton,* 141 AD2d 714 [1988]; *Bontecou v Goldman,* 103 AD2d 732 [1984]; *Scivoletti v Marsala,* 97 AD2d 401 [1983], *affd* 61 NY2d 806 [1984]).

Accordingly, that branch of the Torkans' motion which was to cancel the notice of pendency should have been granted.

The Torkans' contention that they should have been awarded sanctions and an attorney's fee is without merit.

The parties' remaining contentions need not be addressed in light of our determination. Fisher, J.P., Ritter, Dillon and McCarthy, JJ., concur.