15-791-cv
Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alimentari S.p.A.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of February, two thousand sixteen.

PRESENT: REENA RAGGI,
DENNY CHIN,
CHRISTOPHER F. DRONEY,
*Circuit Judges.*

------------------------------------------------------------------------

RIENZI & SONS, INC.,
*Plaintiff-Counter-Defendant-Appellant,*

v.                                                                No. 15-791-cv

N. PUGLISI & F. INDUSTRIA PASTE ALIMENTARI S.p.A. and FRANCESO PULEJO,
*Defendants-Counter-Claimants-Appellees.*

------------------------------------------------------------------------

APPEARING FOR APPELLANT:    MICHAEL J. SHEPPEARD, Ballon Stoll Bader & Nadler, P.C., New York, New York.

APPEARING FOR APPELLEES:    EVAN MANDEL (Rishi Bhandari, *on the brief*), Mandel Bhandari LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Dora L. Irizarry, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on February 17, 2015, is AFFIRMED.

Plaintiff Rienzi & Sons, Inc. ("Rienzi"), an importer and distributor of Italian foods, appeals from an award of summary judgment in favor of pasta manufacturer, N. Puglisi & F. Industria Paste Alimentari S.p.A., and its president, Franceso Pulejo, (collectively, "Puglisi") on two claims for breach of contract,[1] as well as claims for breaches of fiduciary duty and joint venture, and on Puglisi's contract counterclaim. Rienzi submits that the district court erred in (1) applying New York law, rather than the Convention on the International Sale of Goods ("CISG"), to the parties' contract claims; (2) concluding that Rienzi failed to raise a triable issue of fact as to (a) fiduciary relationship or (b) joint venture; (3) denying its motions for (a) leave to amend and (b) reconsideration; and (4) using the May 16, 2013 conversion rate in calculating damages.

We review an award of summary judgment de novo and will affirm only if the record, viewed in favor of the non-moving party, shows no genuine issues of material fact and the moving party's entitlement to judgment as a matter of law. See Jackson v. Federal Express, 766 F.3d 189, 193−94 (2d Cir. 2014). We review denials of reconsideration and

---

[1] The district court subsequently entered judgment in favor of Rienzi on its third breach of contract claim. See Rienzi v. N. Puglisi & F. Industria Paste Alimentari S.p.A., No. 08-cv-2540 (DLI) (RLM), 2015 WL 687691 (E.D.N.Y. Feb. 18, 2015). But that judgment is not at issue on this appeal.

2

leave to amend for abuse of discretion, see Smith v. Hogan, 794 F.3d 249, 253 (2d Cir. 2015); Anderson News, L.L.C. v. American Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012), except where the denial is based on an interpretation of law, which we review de novo, see TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014).   In applying these principles here, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Application of New York Law

In challenging summary judgment on the contract claims, Rienzi does not argue that the district court misapplied New York law or erred in granting summary judgment under it.   Rather, Rienzi contends that the CISG, not New York law, controls these claims, and that Puglisi is not entitled to summary judgment thereunder.[2]

The district court here recognized that the CISG is mandatory unless the parties expressly opt out.   It concluded from "the history of this litigation" that Rienzi had opted out of the CISG by "consent[ing] to the application of New York law."   Rienzi v. N. Puglisi & F. Industria Paste Alimentari S.p.A., No. 08-cv-2540 (DLI) (JMA), 2013 WL

---

[2] We reject Rienzi's contention that the CISG is "incorporated into" or "a part of" New York law.   "[T]he CISG [is] a self-executing agreement between the United States and other signatories, including Italy," Delchi Carrier SpA v. Rotorex Corp., 71 F.3d 1024, 1027 (2d Cir. 1995).   As such, the CISG is "incorporated federal law," which applies "so long as the parties have not elected to exclude its application." BP Oil Int'l Ltd. v. Empresa Estatal Petroleos de Ecuador, 332 F.3d 333, 337 (5th Cir. 2003); see Chateau des Charmes Wines Ltd. v. Sabata USA Inc., 328 F.3d 528, 530 (9th Cir. 2003) ("[T]here is no doubt that the [CISG] is valid and binding federal law.").   Thus, it is as federal law that the CISG preempts local contract law unless the parties agree otherwise.

3

2154157, at \*7 (E.D.N.Y. May 16, 2013) (finding further that delayed invocation of CISG, more than three years after filing suit, would prejudice Puglisi).[3] Whether we review this determination <u>de novo</u> as Rienzi urges, or for abuse of discretion, <u>see</u> <u>Rationis Enters. Inc. of Pan. v. Hyundai Mipo Dockyard Co.</u>, 426 F.3d 580, 585 (2d Cir. 2005) (reviewing for abuse of discretion decision that defendant failed to give reasonable notice under Fed. R. Civ. P. 44.1 as to applicability of foreign law), the argument fails in light of the parties' litigation history.

First, Rienzi made no mention of the CISG when it initiated this action in New York state court in March 2008. Nor did it reference the CISG in its August 2008 answer to Puglisi's counterclaim, or in its September 2008 amended complaint. While such omissions do not, by themselves, indicate that a party has opted-out of the CISG, a second factor supports the conclusion: Rienzi asserted a statute of frauds defense inconsistent with application of the CISG but cognizable under New York law. Third, in the years of ensuing pretrial proceedings, Rienzi repeatedly framed arguments under New York law without ever raising or mentioning the CISG. Fourth, in a July 15, 2011 pretrial conference, Rienzi's counsel expressly stated that "rather than have confusion, we would apply New York law, I'm comfortable with New York law applying." J.A. 1462. Rienzi argues that the statement cannot support CISG opt-out because its counsel later stated that it wished to look further into whether the parties' Settlement Agreement should be

---

[3] <u>See</u> <u>Saks v. Franklin Covey Co.</u>, 316 F.3d 337, 349 (2d Cir. 2003) (holding that preemption issue affecting only choice of law "may be waived if not timely raised").

interpreted under Italian law.  See id. at 1473−74.  But neither in this statement nor elsewhere did Rienzi assert that the CISG controlled the parties' contract claims until August 26, 2011, when it filed its opposition to Puglisi's motion for summary judgment.

On this record, the district court did not err, much less abuse its discretion, in finding that Rienzi had consented to application of New York law to the contract claims at issue before its untimely 2011 invocation of the CISG.  See Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 138 (2d Cir. 2000) ("'[I]mplied consent . . . is sufficient to establish choice of law.'" (quoting Tehran-Berkeley Civil & Env't Eng'rs v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989))); Cargill, Inc. v. Charles Kowsky Res., Inc., 949 F.2d 51, 55 (2d Cir. 1991) ("[E]ven when the parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another state's law.").[4]

---

[4] The parties dispute the CISG's application to Rienzi's contract claims, one of which alleges breach of a legal fees agreement and the other breach of a long-term distribution agreement.  See Convention on the International Sale of Goods, art. 1(1) ("This Convention applies to contracts of sale of goods between parties whose places of business are in different States." (emphasis added)).  Because we uphold the district court's determination that Rienzi consented to New York law controlling the parties' contract claims, we need not resolve this dispute.  Nor need we decide whether, even if the CISG did apply to individual sales pursuant to the distribution agreement, Rienzi can state a claim for breach of contract regarding unshipped orders.  See id. art. 18(3) ("[I]f, by virtue of the offer or as a result of practices which the parties have established between themselves or of usage, the offeree may indicate assent by performing an act, such as one relating to the dispatch of the goods, . . . the acceptance is effective at the moment the act is performed"); id. art. 23 ("A contract is concluded at the moment when an acceptance of an offer becomes effective in accordance with the provisions of this Convention."); J.A. 806–

2.    Breach of Fiduciary Duty

Rienzi argues that its purchase of pasta exclusively from Puglisi (and therefore its economic dependence on Puglisi's production) raised a material issue of fact regarding the parties' fiduciary relationship.  We are not persuaded.  In this context, under New York law, the "two essential elements of a fiduciary relation are . . . de facto control and dominance."  Marmelstein v. Kehillat New Hempstead, 11 N.Y.3d 15, 21, 862 N.Y.S.2d 311, 314 (2008) (internal quotation marks omitted) (alteration in original).  While a fiduciary relationship can exist between a manufacturer and a distributor, see, e.g., North Shore Bottling Co. v. C. Schmidt & Sons, Inc., 22 N.Y.2d 171, 179, 292 N.Y.S.2d 86, 92−93 (1968), the inherent dominance stemming from a distributor's reliance on a manufacturer is not itself sufficient "to establish a confidential relationship."  Legend Autorama Ltd. v. Audi of Am., Inc., 100 A.D.3d 714, 717, 954 N.Y.S.2d 141, 144−45 (2d Dep't 2012); see Furniture Consultants v. Acme Steel Door Corp., 240 A.D.2d 180, 180, 658 N.Y.S.2d 284, 285 (1st Dep't 1997) (upholding summary judgment for manufacturer where distributor failed to adduce facts showing parties' relationship was other than arms-length).

Upon de novo review, we conclude that Rienzi failed to adduce evidence of either Puglisi's de facto control or dominance over Rienzi.  To the contrary, Michael Rienzi, the

07 (testimony of Michael Rienzi acknowledging that individual pasta sales became binding only upon shipment of first container or order).

6

founder, President, and owner of Rienzi, testified that Puglisi did not control Rienzi "in any way," J.A. 804, 1397[5]; that the parties were simply "dependent" upon one another, J.A. 1398; and that Rienzi was not obligated to disclose company information to Puglisi, although it voluntarily did so on occasion, see J.A. 804−05. Cf. A.S. Rampell, Inc. v. Hyster Co., 3 N.Y.2d 369, 376−77, 165 N.Y.S.2d 475, 481−82 (1957) (noting that while distributor's dependence upon manufacturer is likely insufficient to establish confidential relationship, confidential relationship could be shown through evidence that distributor was required to provide business information to manufacturer). Moreover, Rienzi's claims of financial dependence on Puglisi are belied by the record, which shows that Rienzi both represented to the United States Department of Commerce that it "could locate a new pasta supplier and continue selling pasta with little or no disruption to its business," J.A. 956, and actually secured a replacement manufacturer less than two weeks after terminating its relationship with Puglisi, see J.A. 818, 825. Accordingly, summary judgment was properly granted to Puglisi on the fiduciary duty claim.

3.    Breach of Joint Venture

Rienzi argues that a genuine issue as to the existence of a joint venture was raised by evidence that Rienzi and Puglisi became joint clients of a law firm in connection with a Department of Commerce investigation and, in so doing, intended to share information and resources as well as collateral profits and losses resulting therefrom (i.e "lowered duty

---

[5] Rienzi represented that it was actually Rienzi that exercised dominance over Puglisi. See J.A 781, 1396−97.

fees" if there was a positive resolution or the "loss of the expended legal fees and higher duty fees" if the result was unfavorable).   Appellant's Br. 25.

After an independent review of the record, we conclude, for substantially the reasons stated by the district court, that this argument fails on its merits.   See Rienzi v. N. Puglisi & F. Industria Paste Alimentari S.p.A., 2013 WL 2154157, at *14−16.   Rienzi cannot simultaneously claim that it entered a joint venture with Puglisi whereby they agreed to share profits and losses and that Puglisi breached that joint venture by failing to reimburse Rienzi for 100% of legal fees.   See Clarke v. Sky Exp., Inc., 118 A.D.3d 935, 935, 989 N.Y.S.2d 87, 88 (2d Dep't 2014) (observing that plaintiff claiming joint venture must show, among other things, "mutual contributions to the joint undertaking" and "mechanism for the sharing of profits and losses").   If, as Rienzi contends, its fronting of legal fees was a contractual loan given with the understanding that Puglisi would ultimately be responsible for all legal fees associated with the venture, the nature of the relationship was "that of lender and borrower, with the former at no risk of suffering any losses," which is not sufficient to establish a joint venture.   Kaufman v. Torkan, 51 A.D.3d 977, 979, 859 N.Y.S.2d 253, 255 (2d Dep't 2008).   Further, the record reflects Rienzi's ultimate responsibility for customs duties, and Michael Rienzi admitted that such duties are typically paid by importers and that there was no agreement between the parties to share these costs.   See J.A. 829.   Thus, Rienzi's responsibility for the duties does not support a joint venture.

8

Rienzi offers no other competent evidence demonstrating that, by jointly retaining a law firm, the parties intended to form a joint venture giving rise to a fiduciary relationship, see Weisman v. Awnair Corp. of Am., 3 N.Y.2d 444, 448, 165 N.Y.S.2d 745, 749 (1957), much less that Rienzi and Puglisi exercised joint control over any resulting venture. Accordingly, summary judgment was properly granted to Puglisi on this claim.

4.      Motion To Amend Pleading

Rienzi argues that then-Magistrate Judge Azrack abused her discretion in denying its November 2008 motion to amend its pleading. We decline to consider the merits of this claim because Rienzi failed to object in the district court. See Fed. R. Civ. P. 72(a); Caidor v. Onondaga Cty., 517 F.3d 601, 603−05 (2d Cir. 2008) (holding that even pro se plaintiff "who fails to object timely to a magistrate's order on a non-dispositive matter waives the right to appellate review of that order").

5.      Motion for Reconsideration

We also identify no abuse of discretion in the district court's denial of reconsideration. Rienzi simply reiterated its earlier arguments regarding application of the CISG, and presented new theories to oppose summary judgment for Puglisi. See Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (stating that motion for reconsideration is not vehicle "for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple" (internal quotation marks omitted)).

9

6.    Judgment-Day Rule

Rienzi challenges the calculation of damages by reference to the conversion rate in effect on May 16, 2013, the date of the district court's summary judgment decision, rather than the rate in effect on February 17, 2015, the date judgment was entered.

When a court converts a foreign obligation into American currency, it must determine "the proper date for conversion of the foreign currency into our own."  Shaw, Savill, Albion & Co. v. The Fredericksburg, 189 F.2d 952, 955 (2d Cir. 1951).  In this diversity action, New York law determines the applicable currency-conversion rate.  See Vishipco Line v. Chase Manhattan Bank, N.A., 660 F.2d 854, 865−66 (2d Cir. 1981).

N.Y. Judiciary Law § 27(b) states that:

> In any case in which the cause of action is based upon an obligation denominated in a currency other than currency of the United States, a court shall render or enter a judgment or decree in the foreign currency of the underlying obligation.  Such judgment or decree shall be converted into currency of the United States at the rate of exchange prevailing on the date of entry of the judgment or decree.

N.Y. Judiciary Law § 27(b).  While the New York Court of Appeals has not specifically construed the phrase "judgment or decree" in § 27(b), New York law elsewhere defines "judgment" as "the determination of the rights of the parties in an action or special proceeding" that "may be either interlocutory or final."  N.Y. C.P.L.R. § 5011; see also N.Y. Surrogate Court Procedure Act § 601 (defining decree as "[t]he determination of the rights of the parties to a special proceeding," and noting that decrees have "the same effect and may be enforced in like manner as a similar judgment . . . made by the supreme court in

10

an action"); Black's Law Dictionary 497 (10th ed. 2014) (defining "decree" as "1. Traditionally, a judicial decision in a court of equity, admiralty, divorce, or probate – similar to a judgment of a court of law . . . 2. A court's final judgment . . . 3. Any court order, but esp[ecially] one in a matrimonial case"). The clarity of § 5011's text allows us confidently to predict that New York's highest court would not construe § 27(b) to require use of the conversion rate in effect on the date of <u>final</u> judgment where, as here, there was an earlier "determination of the rights of the parties." N.Y. C.P.L.R. § 5011; cf. McGrath v. Toys "R" Us, Inc., 356 F.3d 246, 250 (2d Cir. 2004) (explaining that certification of state law question to state's highest court is warranted where "statute's plain language does not indicate the answer" to issue in dispute (internal quotation marks omitted)). Because the district court determined on May 16, 2013, that Puglisi was entitled to summary judgment on its €898,410.06 counterclaim, see Rienzi v. N. Puglisi & F. Industria Paste Alimentari S.p.A., 2013 WL 2154157, at *16−17, the court properly used the conversion rate in effect on that date to convert the damages due Puglisi from euros to dollars.

7.    Conclusion

We have considered Rienzi's remaining arguments and conclude that they are without merit. We therefore AFFIRM the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

11