Heather Jeranek, Plaintiff,

against
Kevin Gritzer, Defendant.


4232/2014

Attorney for Plaintiff:
Aaron H. Pierce, Esq.
253 Church Street, Suite 4A
New York, NY 10013
Attorney for Defendant:
Michael Konopka, Esq.
277 Broadway, Suite 810
New York, NY 10007


Carolyn E. Demarest, J.

In this action by plaintiff Heather Jeranek (plaintiff) against defendant Kevin Gritzer (defendant) alleging a breach of an agreement to co-purchase the shares in Heights Realty Inc. (Heights Realty), and seeking an accounting of the income and expenses of Heights Realty, a disbursement of her alleged 50% share of Heights Realty's profits, and damages, defendant moves, under motion sequence number two, for an order, pursuant to CPLR 3212 (b), granting him summary judgment dismissing plaintiff's complaint against him.
BACKGROUND
In 2003, plaintiff and defendant met and commenced a romantic relationship. Thereafter, they lived together, first in an apartment in Jersey City and then in an apartment at 109 St. Mark's Place in Brooklyn, New York. By a deed dated August 14, 2007, plaintiff and defendant [*2]purchased real property located at 730 4th Avenue, in Brooklyn, New York (the Fourth Avenue property), as tenants in common. At about the same time that plaintiff and defendant purchased the Fourth Avenue property, they opened a joint bank account at TD Bank (the TD Bank account) in order to, among other things, deposit the rent checks from the Fourth Avenue property and otherwise manage the Fourth Avenue property. According to defendant, he also made a number of deposits into the TD Bank account from his own earnings.
In September 2009, defendant advised plaintiff that he would be purchasing all of the shares of Heights Realty, a New York corporation, which owned real property located at 290 Fifth Avenue, in Brooklyn, New York (the Fifth Avenue property) as its sole asset. On October 9, 2009, the closing of the sale of 100% of the outstanding stock of Heights Realty took place, at which defendant, as the purchaser, purchased such stock from the sellers for the sales price of $1,190,000. 
The terms of the sale of Heights Realty required defendant to make a down payment of $40,000 and to assume an existing mortgage in the principal amount of $1,150,000. The down payment was paid by defendant by check in the amount of $40,000 drawn on the TD Bank joint account. Plaintiff concedes that she knew that defendant was going to use the $40,000 from the TD Bank account for the purchase of Heights Realty prior to the transaction taking place, and that she agreed to this (Plaintiff's Dep. Transcript at 52). She also concedes that she was aware, prior to the closing (at which she was not present), that her name would not be on the deed to the Fifth Avenue property (Id. at 57, 70). She claims, however, that defendant had agreed that her name would be added to the deed at a later date, following the dissolution of the corporation (Id. at 58, 66-67).
Plaintiff claims that she orally asked defendant several times following the closing, over the course of three years (from October 9, 2009 until October 2012), to add her name to the deed to the Fifth Avenue property, but that he never did so (Id. at 65, 68, 73-76). According to plaintiff, defendant told her that Heights Realty owned the property, and that he needed to dissolve it before her or his name could be on the deed (Id. at 66). Defendant, in his affidavit, claims that plaintiff never demanded that her name be added to the deed of the Fifth Avenue property. Defendant further claims that he never sought to dissolve Heights Realty, but states that he did ultimately transfer the assets of Heights Realty to another corporate entity that he controls. 
Plaintiff admits that she never asked defendant to be listed as a 50% shareholder of Heights Realty (Plaintiff's Dep. Transcript at 67). It is undisputed that plaintiff never received any of the profits from Heights Realty (Id. at 71). Plaintiff admits that she has never made any contribution to the mortgage for the Fifth Avenue property, and that her only financial contribution to it was her one-half interest in the $40,000 check drawn by defendant from the TD Bank account. Plaintiff concedes that she never asked defendant for any portion of the profits from the Fifth Avenue property or Heights Realty and that she never asked defendant for any type of an accounting of Heights Realty's profits (Id. at 71). 
There is no written agreement showing that defendant agreed to give plaintiff any interest in Heights Realty or the Fifth Avenue property. Plaintiff merely points to the fact that the $40,000 check was drawn by defendant on their joint TD Bank account (listing her name as a joint owner), which states, in the memo section, that it was for the purchase of the Fifth Avenue property. She also relies on the fact that this check was, in fact, used for the payment of defendant's purchase of the shares in Heights Realty, which owned the Fifth Avenue property. Plaintiff also annexes leases for the Fifth Avenue property, signed by both plaintiff and defendant as landlords, which directed the payment of rent to Heights Realty. Defendant explains plaintiff's signature on these leases by stating that plaintiff, as his girlfriend, helped him manage the Fifth Avenue property and would, at times, execute leases as an owner/manager. He asserts that after he and plaintiff broke up, another (now former) girlfriend of his, Angela Melnyk, also helped him to manage the Fifth Avenue property and similarly executed leases as an owner/manager.
In October 2011, defendant discovered that, over the course of the prior year, plaintiff had [*3]systematically withdrawn funds from the TD Bank account and transferred them into her personal account. These transfers amounted to approximately $53,000. Plaintiff claims that these transfers were made to buy clothes and gifts for defendant. This is denied by defendant, who claims that plaintiff "stole" these funds. Defendant then withdrew, in a single withdrawal on November 8, 2011, the sum of $41,210.94 from the TD Bank account.[FN1]
The TD Bank account was closed on January 23, 2012.
Plaintiff and defendant's romantic relationship ended and they separated, although the parties "business relationship" continued. Plaintiff is presently living in an apartment at the Fourth Avenue property. On January 25, 2013, defendant (as the plaintiff therein) commenced an action against plaintiff (as the defendant therein), seeking the partition of the Fourth Avenue property (Gritzer v Jeranek, Sup Ct, Kings County, Index No. 1528/2013) (the partition action), which is presently pending before Justice Loren Baily-Schiffman. Defendant, in the partition action, alleges that he and plaintiff each own a 50% undivided interest in the Fourth Avenue property, and that plaintiff is in possession of the Fourth Avenue property and is using it for her own purposes without paying rent and without accounting to him for the rental income of that property. He seeks a judgment directing the partition of the Fourth Avenue property and an accounting of the income and expenses of that property. 
Over a year after defendant commenced the partition action, plaintiff, on March 19, 2014, commenced the instant action against defendant. Plaintiff's complaint alleges a first cause of action for breach of contract, a second cause of action for an equitable accounting, a third cause of action for breach of fiduciary duty, a fourth cause of action for fraud, a fifth cause of action for conversion, a seventh [FN2]
cause of action for unjust enrichment, and an eighth cause of action for punitive damages. Defendant interposed an answer to plaintiff's complaint, which raises affirmative defenses, including the statute of frauds.
On October 23, 2015, the note of issue was timely filed by defendant. The certificate of readiness asserts that all discovery has been completed. By an order dated December 2, 2015, a motion by plaintiff to strike the note of issue was denied since plaintiff never noticed a deposition of defendant and such deposition was deemed waived.[FN3]
On December 2, 2015, defendant filed his instant motion for summary judgment. 
DISCUSSION
Plaintiff's first cause of action for breach of contract alleges that she and defendant are parties to an agreement that defendant has breached, and, as a result of defendant's breach, she has suffered and continues to suffer monetary damages of no less than $500,000. In paragraph 7 of her complaint, plaintiff claims defendant, on October 2, 2009, breached an agreement "to co-purchase 100% of the shares in [Heights Realty] by closing on the sale of [Heights Realty], but without naming [her] as a purchaser and instead purchasing [Heights Realty's] shares solely under Defendant's name." Although plaintiff, in her first cause of action, seeks damages, in paragraph 19 of her complaint, she further specifies that she seeks an order directing an equal [*4]division of the shares of Heights Realty, an accounting of its income and expenses, and a disbursement of her share of the profits, if any, of Heights Realty, to date.
Plaintiff, at her deposition, however, testified that the alleged agreement, rather than being an agreement to co-purchase 100% of the shares of Heights Realty, was actually an agreement that she would be added to the deed to the Fifth Avenue property (Plaintiff's Dep. Transcript at 57-59). She testified that she had continued to ask defendant to add her name to the deed of the Fifth Avenue property, but he did not do so (Id. at 62-65). She further testified that she never asked to be listed as a 50% shareholder of Heights Realty because she believed that defendant was going to be dissolving it, and that after he dissolved it, her name could be listed on the deed (Id. at 66-67). 
Thus, plaintiff's claim, as explained by her at her deposition, is that defendant breached an oral agreement to add her name to the deed to the Fifth Avenue property. As such, it is a claim to convey an interest in real property. The statute of frauds, as set forth in General Obligations Law § 5-703 (a) (1), provides that "[a]n estate or interest in real property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his [or her] lawful agent, thereunto authorized by writing." General Obligations Law § 5-703 (a) (2) further provides that "[a] contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his [or her] lawful agent thereunto authorized by writing." Since plaintiff's claim is for a creation or transfer of an interest in real property, it is subject to the statute of frauds. 
Plaintiff, in contending that the statute of frauds should not bar her breach of contract claim, acknowledges that she, inconsistently with her complaint, testified at her deposition, that she was promised a 50% interest in the Fifth Avenue property, rather than a 50% interest in Heights Realty. She argues that she was promised an interest in the Fifth Avenue property regardless of how that interest was held and that her deposition testimony merely reflected her confusion as to "the legal holding structure" for the ownership of the Fifth Avenue property. Such explanation does not alter plaintiff's claim to an interest in real property that must be reflected in a writing under the statute of frauds.
It is well established that where a claim "involves the sale of stock of a corporation whose only asset is an interest in realty, the Statute of Frauds is applicable to any transfer of the stock" (Pritsker v Kazan, 132 AD2d 507, 507 [1st Dept 1987]; see also Yenom Corp. v 155 Wooster St. Inc., 33 AD3d 67, 71 [1st Dept 2006]; Bergman v Krausz, 19 AD3d 186, 187 [1st Dept 2005]), however, where, the alleged contract is not, as in the cited cases, for the direct purchase of the stock divesting the sellers of all interest in the real property, but as now alleged by plaintiff, is for the purchase of shares as the basis for property ownership as an ongoing joint business venture between partners, the statute of frauds does not apply (see Mendelovitz v Cohen, 66 AD3d 849, 850 [2d Dept 2009]; Foster v Kovner, 44 AD3d 23, 27 [1st Dept 2007]; see also, Schultz v Sayada, 133 AD3d 1015 [3d Dept 2015]). Specifically,"[t]he statute of frauds does not render void oral joint venture agreements to deal in real property, as the interest of each joint venturer in a joint venture is deemed personalty" (Malaty v Malaty, 95 AD3d 961, 962 [2d Dept 2012]). The rationale underlying this rule is that a plaintiff who is a joint venturer is not seeking to acquire an interest in real property, but is asserting an interest in joint venture income and assets (see Walsh v Rechler, 151 AD2d 473, 473 [2d Dept 1989]).
Plaintiff seeks to avoid the bar of the statute of frauds by characterizing her alleged oral agreement with defendant as a joint venture agreement. Plaintiff contends that the question of whether or not she and defendant mutually agreed to establish a joint venture and whether they, together, agreed to purchase the Fifth Avenue property presents a material question of fact, which precludes the granting of defendant's motion. In support of this contention, plaintiff relies upon [*5]her allegation, in paragraph 6 of her complaint, that she and defendant, "together agreed to utilize monies from the [TD Bank account] to purchase shares in Heights Realty, Inc. . . . whose assets include real property." She argues that this allegation in her complaint, although not specifically denominated a joint venture or alleging the elements thereof, describes an agreement to form a joint venture "to co-purchase 100% of the shares of Heights Realty".
However, plaintiff does not claim to have entered into joint venture to manage real property, but specifically claims that she was entitled to an ownership interest in title to the Fifth Avenue property. As discussed above, plaintiff, at her deposition, testified that the alleged oral agreement was that her name was to be added to the deed of the Fifth Avenue property. As such, it was an agreement to acquire an interest in real property. Plaintiff testified that she expected Heights Realty to be dissolved, as the explanation for her failure to act promptly to demand her 50% share of stock, belying her claim to have intended to co-purchase shares, the price of which she did not know.
Moreover, plaintiff has failed to plead or allege any of the requisite elements of a joint venture. The only reference by plaintiff, in her complaint, to a joint venture is in paragraph 5 thereof, in which she alleges that she and defendant together held a bank account at TD Bank, "wherein both Plaintiff and Defendant retained monies to be used in various joint business ventures." At her deposition, Plaintiff explained that the joint business ventures that paragraph was "talking about" was only the Fourth Avenue property (Plaintiff's Dep. Transcript at 50). She testified that she did not know what "various" meant, but explained that the TD Bank account was established when she and defendant purchased the Fourth Avenue property so that the rents would be paid into that account and the mortgage would be paid out of that account (id.). She stated that although paragraph 5 of her complaint referred to "various joint business ventures," it was really only referring to the one involving the Fourth Avenue property (Id. at 50-51).
" The essential elements of a joint venture are an agreement manifesting the intent of the parties to be associated as joint venturers, a contribution by the coventurers to the joint undertaking (i.e., a combination of property, financial resources, effort, skill or knowledge), some degree of joint proprietorship and control over the enterprise; and a provision for the sharing of profits and losses'" (Mawere v Landau, 130 AD3d 986, 988 [2d Dept 2015], quoting Commander Terms. Holdings, LLC v Poznanski, 84 AD3d 1005, 1009 [2d Dept 2011] [internal quotation marks omitted]; see also Clarke v Sky Express, Inc., 118 AD3d 935, 935 [2d Dept 2014]; Hamlet at Willow Cr. Dev. Co., LLC v Northeast Land Dev. Corp., 64 AD3d 85, 103 [2d Dept 2009], lv dismissed 13 NY3d 900 [2009]; Tilden of N.J. v Regency Leasing Sys., 230 AD2d 784, 785-786 [2d Dept 1996]; Mendelson v Feinman, 143 AD2d 76, 77 [2d Dept 1988]). "The ultimate inquiry is whether the parties have so joined their property, interests, skills and risks that for the purpose of the particular adventure their respective contributions have become as one and the commingled property and interests of the parties have thereby been made subject to each of the associates on the trust and inducement that each would act for their joint benefit" (Matter of Steinbeck v Gerosa, 4 NY2d 302, 317 [1958], appeal dismissed 358 US 39 [1958] [internal quotation marks omitted]; see also Hamlet at Willow Cr. Dev. Co., LLC, 64 AD3d at 104; Natuzzi v Rabady, 177 AD2d 620, 622 [2d Dept 1991]). It is from this element of mutual trust that each will act for their joint benefit that a fiduciary duty arises.
"The absence of any one element is fatal to the establishment of a joint venture'" (Kidz Cloz, Inc. v Officially For Kids, Inc., 320 F Supp 2d 164, 171 [SD NY 2004], quoting Zeising v Kelly, 152 F Supp 2d 335, 347-348 [SD NY 2001]). In particular, the parties' agreement to share in both the profits and the losses has been held to be an "indispensable essential" of a joint venture (Matter of Steinbeck, 4 NY2d at 317; see also Kaufman v Torkan, 51 AD3d 977, 979 [2d Dept 2008]; Latture v Smith, 1 AD3d 408, 408-409 [2d Dept 2003]; Goodstein Props. v Rego, 266 AD2d 506, 507 [2d Dept 1999], lv denied 95 NY2d 760 [2000]; Davella v Nielsen, 208 AD2d 494, 494 [2d Dept 1994]). Where there is no agreement to share losses, a joint venture cannot be found to exist (see Matter of Steinbeck, 4 NY2d at 317; Moses v Savedoff, 96 AD3d 466, 470 [1st Dept 2012]; Kaufman, 51 AD3d at 979; Davella, 208 AD2d at 494; De Vito v [*6]Pokoik, 150 AD2d 331, 331 [2d Dept 1989]). Indeed, case law establishes that if the plaintiff does not "allege a mutual promise or undertaking to share the burden of the losses of the alleged enterprise," he or she cannot state a legally cognizable claim based upon a joint venture agreement (Rocchio v Biondi, 40 AD3d 615, 616 [2d Dept 2007]; see also First Keystone Consultants, Inc. v DDR Constr. Servs., 74 AD3d 1135, 1137 [2d Dept 2010]; Latture, 1 AD3d at 408-409; Ginsberg v Schron, 288 AD2d 146, 146 [1st Dept 2001]; Mawere v Landau, 130 AD3d 986 [2d Dept 2015]). "An individual who has no proprietary interest in a business except to share the profits as compensation for services is not a joint venturer" (De Vito, 150 AD2d at 331; see also Kidz Cloz, Inc., 320 F Supp 2d at 175; Scott v Rosenthal, 2000 WL 1863542, *3 [SD NY 2000]; Impastato v DeGirolamo, 117 Misc 2d 786, 789 [Sup Ct, Kings County 1983], affd 95 AD2d 845 [2d Dept 1983]; Koether v Sherry, 40 Misc 3d 1237[A], 2013 NY Slip Op 51471[U], *9 [Sup Ct, Kings County 2013])
Here, plaintiff fails to allege any agreement to share in either the profits or the losses of a joint venture. Plaintiff's own assertions reflect that she never reached a definite agreement as to the sharing of profits and losses with defendant (see Schnur v Marin, 285 AD2d 639, 639-640 [2d Dept 2001]). There is no allegation in plaintiff's complaint as to any agreement that profits from Heights Realty or the Fifth Avenue property would be shared. Indeed, at her deposition, plaintiff conceded that she never asked defendant for any portion of the profits from Heights Realty or the Fifth Avenue property (Plaintiff's Dep. Transcript at 71). Although, through her complaint she seeks a share of the profits, there is also no allegation in plaintiff's complaint or in her affidavit that she agreed to share the losses from Heights Realty or the Fifth Avenue property. Plaintiff concedes that after Heights Realty was purchased by defendant, she did not pay the mortgage on the Fifth Avenue property or make any financial contribution to it, such as the payment of real estate taxes or other property expenses. Plaintiff acknowledges that defendant alone owned the shares of Heights Realty and would, consequently, assume all the risk of loss.
In addition, there are no allegations in plaintiff's complaint that she and defendant entered into an agreement manifesting their intent to be associated as joint venturers with respect to the Fifth Avenue property. Plaintiff merely contends that the existence of a joint venture agreement between her and defendant is evidenced by the fact that her name was on the check from the joint TD Bank account which defendant signed and used to make payment on the transaction to purchase Heights Realty, owner of the Fifth Avenue property. The fact that the check was drawn by defendant on a joint bank account, with plaintiff's consent, however, does not manifest the existence of a joint venture agreement, but merely evidences a loan to defendant of 50% of the payment. The check itself, as noted above, merely states, in the memo section, that it was for the purchase of the Fifth Avenue property, and does not refer to any joint venture agreement or any interest obtained by plaintiff in a joint venture. Furthermore, plaintiff acknowledges that both she and defendant made various withdrawals from their joint TD Bank account. 
In addition, plaintiff contends that hundreds of pages of e-mails (although only several e-mails are annexed to plaintiff's opposition papers) exist, wherein she, along with tenants, brokers, and defendant, held both defendant and herself out as being co-owners of the Fifth Avenue property. She has submitted e-mails written by herself to tenants and by tenants to her. In some of these e-mails, plaintiff stated that she and her boyfriend Kevin (defendant) were the owners of the Fifth Avenue property, and the tenants or prospective tenants responded to her concerning matters such as seeing the apartments and signing leases. As claimed by defendant, all of the e-mails are consistent with plaintiff's role in helping defendant manage the building. In some cases, plaintiff was clearly deferring to defendant in making decisions. While plaintiff represented herself as a co-owner of the Fifth Avenue property, these e-mails, which are not signed by defendant, do not constitute an agreement on the part of defendant to convey any ownership interest in Heights Realty or the Fifth Avenue property to plaintiff, nor do they show that the intent of the parties was to be associated as joint venturers.
Plaintiff further argues that defendant, in his answer,[FN4]
has admitted paragraph 6 of her complaint, which she claims describes an agreement to form a joint venture to purchase the Fifth Avenue property. Defendant, in his answer, however, merely admitted that he and plaintiff both agreed that they would be utilizing monies drawn from the TD Bank account to purchase shares in Heights Realty, indicating that plaintiff had prior knowledge of defendant's intent to use the funds from this account for his purchase of Heights Realty and that she authorized this use. This does not constitute an admission that a joint venture existed.
With respect to the necessary element of having some degree of joint proprietorship and control over the enterprise, plaintiff does not allege any control over a joint venture, but, rather, complains, in paragraph 17 of her complaint, that defendant wrongfully prevented her from being involved in the management of Heights Realty and the Fifth Avenue property. Plaintiff contends that the existence of a joint venture is evidenced by the fact that she signed "numerous" leases (of which she annexes two), listing herself as a landlord for the Fifth Avenue property. Notably, however, paragraph 4 of these two leases required tenants to make their checks payable to Heights Realty, which was the title owner of the Fifth Avenue property. Plaintiff never received any income from Heights Realty in connection with these leases. While plaintiff, in her affidavit submitted in opposition to defendant's motion, also now asserts that she was involved in the cleaning of the building, tenant interaction, leases, rental listings and showings, and banking for the Fifth Avenue property, these alleged services performed by her, standing alone, are insufficient to establish a joint venture, but are equally consistent with the duties of a hired building manager.
Thus, the court finds that, contrary to plaintiff's contentions, no triable issue of fact exists as to whether there was an oral agreement to form a joint venture. Rather, plaintiff's failure to plead the requisite elements of a joint venture is fatal to her claim that a joint venture existed between her and defendant. Therefore, the alleged agreement is subject to the statute of frauds. 
In order "[t]o satisfy the statute of frauds, a memorandum, subscribed by the party to be charged, must designate the parties, identify and describe the subject matter, and state all of the essential terms of a complete agreement" (Dahan v Weiss, 120 AD3d 540, 541 [2d Dept 2014]; see also TR-One, Inc. v Lazz Dev. Co., Inc., 95 AD3d 1303, 1303-1304 [2d Dept 2012]; Matter of Licata, 76 AD3d 1076, 1077 [2d Dept 2010]; Nesbitt v Penalver, 40 AD3d 596, 597 [2d Dept 2007]; Walentas v 35-45 Front St. Co., 20 AD3d 473, 474 [2d Dept 2005]; Cohen v Swenson, 140 AD2d 407, 407 [2d Dept 1988]; Schuman v Strauss, 139 AD2d 502, 503 [2d Dept 1988], appeal denied 72 NY2d 804 [1988]). "A writing is not a sufficient memorandum unless the full intention of the parties can be ascertained from it alone[,] without recourse to parol evidence'" (Dahan, 120 AD3d at 542, quoting Cooley v Lobdell, 153 NY 596, 600 [1897]; see also Conway v Maher, 185 AD2d 570, 572 [3d Dept 1992]). That is, "[t]o satisfy the Statute of Frauds [a] writing must set forth the entire contract with reasonable certainty so that the substance thereof appears from the writing alone" (Checkla v Stone Meadow Homes, Inc., 280 AD2d 510, 510 [2d Dept 2001] [internal quotation marks omitted]).
Here, there is no writing subscribed by defendant which satisfies the statute of frauds. The check does not describe any agreement to convey an interest in the Fifth Avenue property or Heights Realty to plaintiff, and it is patently insufficient to state the essential terms of a complete agreement. The leases do not refer to any agreement between plaintiff and defendant. The e-[*7]mails likewise do not express the intention of the parties to enter into any agreement. While "the statutorily required writing need not be contained in one single document, but rather may be furnished by piecing together other, related writings" (Dahan, 120 AD3d at 542 [internal quotation marks omitted), even piecing together the check, leases, and e-mails, these writings are insufficient to memorialize the existence of an agreement to convey an interest in the Fifth Avenue property or Heights Realty to plaintiff. Since the alleged oral agreement fails to satisfy the statute of frauds, plaintiff's first cause of action for breach of contract must fail as a matter of law as barred by the statute of frauds. Therefore, summary judgment dismissing plaintiff's first cause of action for breach of contract must be granted (see CPLR 3212 [b]).
Plaintiff's second cause of action for an equitable accounting alleges that defendant has failed to keep transparent financial records and has withdrawn and entirely depleted the funds held in the TD Bank account originally opened and maintained by them. She asserts that she is entitled to an equitable accounting. Defendant (who has annexed the bank statements for the TD Bank account) asserts that since he is seeking an accounting of the income and expenses of the Fourth Avenue property in the pending partition action, and the TD Bank account was established in 2007 to assist him and plaintiff in managing the Fourth Avenue property, which is the subject of the partition action, an accounting of the funds that were in the TD Bank account will be addressed in the partition action. Plaintiff, in response, contends that if this cause of action is dismissed, defendant will, in effect, gain absolute power over the disposition of this claim for an accounting since she has not interposed a counterclaim for an accounting in that action. This contention is without merit since the accounting will be determined in the partition action regardless of whether the request for this relief is asserted as a claim by defendant or a counterclaim by plaintiff in the partition action. As to the $41,210.94 that was withdrawn from the TD Bank account by defendant on November 8, 2011, following plaintiff's withdrawal of approximately $53,000, plaintiff, at her deposition, specifically testified that she is not seeking to recover that sum in this action and that these monies are not the subject of this action (Plaintiff's Dep. Transcript at 175). 
Plaintiff also contends that her second cause of action for an equitable accounting includes an accounting of the proceeds from the commercial use of the Fifth Avenue property. However, " [t]he right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest'" (Center for Rehabilitation & Nursing at Birchwood, LLC v S & L Birchwood, LLC, 92 AD3d 711, 713 [2d Dept 2012], quoting Palazzo v Palazzo, 121 AD2d 261, 265 [2d Dept 1986]). Here, plaintiff's claim for an accounting is based upon her claim of an interest in the Fifth Avenue property and Heights Realty, and is dependent upon the enforceability of the alleged oral agreement (see Guarino v N. Country Mortg. Banking Corp., 79 AD3d 805, 807 [2d Dept 2010]). As the alleged oral agreement with respect to the Fifth Avenue property falls within the statute of frauds, it may not be used in support of plaintiff's second cause of action for an equitable accounting (see Leslie v Frank, 276 AD2d 257, 257 [1st Dept 2000]; Lake Overlook Partners, LLC v Sosa, 49 Misc 3d 1215[A], 2015 NY Slip Op 51686[U], *9 [Sup Ct, Kings County 2015]). Thus, summary judgment dismissing plaintiff's second cause of action for an equitable accounting is mandated (see CPLR 3212 [b]).
With respect to plaintiff's third cause of action for breach of fiduciary duty, it is well established that "[i]n order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct" (Kurtzman v Bergstol, 40 AD3d 588, 590 [2d Dept 2007]). Plaintiff's complaint alleges that it was defendant's fiduciary duty, as a 50% shareholder of Heights Realty, to allow her to participate in Heights Realty, and to consult with her as to its management, pursuant to their alleged joint venture agreement, and to prevent waste, to keep honest and accurate accounts of the business, and to allow her access to the Fifth Avenue [*8]property in order to effectively carry out her alleged contractual duties and obligations.[FN5]
She alleges that defendant has failed to uphold this fiduciary duty and that his failure has "single-handedly resulted in the abject failure, to date, of [Heights Realty]" for which she seeks damages of no less than $500,000. Plaintiff further contends that by entering into a joint venture with her, defendant assumed a fiduciary relationship towards her, and that, as a result of his misappropriation of the proceeds of the joint venture, defendant violated his fiduciary duty to her. However, since plaintiff has failed to establish the existence of a joint venture, there is no fiduciary relationship arising thereof, and, thus, there can be no viable claim for a breach of fiduciary duty (see First Keystone Consultants, Inc., 74 AD3d at 1137-1138; American Bus. Training Inc. v American Mgt. Assn., 50 AD3d 219, 225 [1st Dept 2008], lv denied 10 NY3d 713 [2008]; Langer, 44 AD3d at 426; Kidz Cloz, Inc., 320 F Supp 2d at 176). 
As pleaded, plaintiff's claim of a fiduciary relationship is based upon her claim of a 50% interest in Heights Realty. Since plaintiff's claim of an interest in Heights Realty or the Fifth Avenue property is barred by the statute of frauds, no fiduciary relationship has been established between her and defendant with respect to Heights Realty or the Fifth Avenue property. Consequently, summary judgment dismissing plaintiff's third cause of action is required (see CPLR 3212 [b]).
Plaintiff's fourth cause of action for fraud alleges, in paragraph 32 of her complaint, that defendant made various material misrepresentations to her, including, but not limited to, representing that she would be an active 50% equity owner of Heights Realty and that she would be duly compensated accordingly. She further alleges, in paragraph 33 of her complaint, that she relied upon defendant's false representation, and invested substantial money.[FN6]
She additionally alleges, in paragraph 35 of her complaint, that defendant's actions were intentional and intended to defraud her. She maintains that she has been damaged in the amount of at least $500,000. 
Plaintiff argues that based upon the above allegations, she has pleaded a fraud claim with sufficient particularity. She further argues that her fraud claim is separate from her breach of contract claim because defendant was actively misappropriating profits from a joint venture that he should have been distributing to or holding in trust for her.
Plaintiff's arguments must be rejected. "A cause of action to recover damages for fraud does not lie where, as here, the only fraud claimed relates to an alleged breach of contract" (Hylan Elec. Contr., Inc. v MasTec N. Am., Inc., 74 AD3d 1148, 1149 [2d Dept 2010]; see also Rocchio v Biondi, 40 AD3d 615, 617 [2d Dept 2007]; Marks v Nassau County Assn. for Help of Retarded Children, 135 AD2d 512, 513 [2d Dept 1987]). Plaintiff's fraud cause of action "merely restates her cause of action to recover damages for breach of contract" (Marks, 135 AD2d at 513). "The fraud alleged is based on the same facts as underlie the contract claim and is not collateral to the contract and no damages are alleged that would not be recoverable under a contract measure of damages" (J.E. Morgan Knitting Mills, Inc. v Reeves Bros., Inc., 243 AD2d 422, 423 [1st Dept 1997]; see also Laurel Hill Advisory Group, LLC v American Stock Transfer [*9]& Trust Co., LLC, 112 AD3d 486, 487 [1st Dept 2013]). Thus, inasmuch as plaintiff's fraud claim is duplicative of her breach of contract claim, summary judgment dismissing plaintiff's fourth cause of action must be granted (see CPLR 3212 [b]).
Plaintiff's fifth cause of action for conversion alleges that defendant converted for his own gain and personal use: (1) profits earned from the business of Heights Realty, (2) her capital contributions to Heights Realty, and (3) the Fifth Avenue property. She seeks damages in an amount of no less than $500,000. 
"Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights'" (State v Seventh Regiment Fund, Inc., 98 NY2d 249, 259 [2002], quoting Vigilant Ins. Co. of Am. v Housing Auth. of City of El Paso, Tex., 87 NY2d 36, 46 [1995]). To establish conversion, a plaintiff "must demonstrate legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question . . . to the exclusion of the plaintiff's rights" (Hamlet at Willow Cr. Dev. Co., LLC, 64 AD3d at 113 [internal quotation marks omitted]). 
" [A] claim of conversion cannot be predicated on a mere breach of contract"'" (East End Labs., Inc. v Sawaya, 79 AD3d 1095, 1096 [2d Dept 2010], quoting Hamlet at Willow Cr. Dev. Co., LLC, 64 AD3d at 112, quoting MBL Life Assur. Corp. v 555 Realty Co., 240 AD2d 375, 376 [2d Dept 1997]). Here, plaintiff's complaint fails to set forth allegations which "would constitute a wrong separate and distinct from an alleged breach of contract which could give rise to independent tort liability" (East End Labs., Inc., 79 AD3d at 1096; see also Hochman v LaRea, 14 AD3d 653, 655 [2d Dept 2005]; MBL Life Assur. Corp., 240 AD2d at 376). Rather, plaintiff's claim alleging conversion merely restates her first cause of action to recover damages for breach of contract and does not allege "a separate taking"[FN7]
(Priolo Communications, Inc. v MCI Telecom. Corp., 248 AD2d 453, 454 [2d Dept 1998]). Consequently, summary judgment dismissing plaintiff's fifth cause of action is warranted (see CPLR 3212 [b]).
As to plaintiff's seventh cause of action for unjust enrichment, the court notes that in order to adequately state a cause of action to recover damages for unjust enrichment, "the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered'" (Georgia Malone & Co., Inc. v Rieder, 19 NY3d 511, 516 [2012], quoting Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 182 [2011]; see also AHA Sales, Inc. v. Creative Bath Prods., Inc., 58 AD3d 6, 19 [2d Dept 2008]). Here, plaintiff alleges, in paragraph 47 of her complaint, that defendant has been unjustly enriched by utilizing her efforts, capital contributions, ideas, reputation, and contacts without just compensation. In support of her allegation, plaintiff asserts that defendant was enriched by using her portion of the TD Bank account (recovery of which plaintiff claims not to seek) and by her involvement in the subsequent management of the Fifth Avenue property without putting her name on the deed to the Fifth Avenue property or granting her a 50% interest in Heights Realty. She claims to have sustained damages in an amount of no less than $500,000, which is the same sum sought by her in her alleged claim for breach of contract.
Plaintiff's unjust enrichment claim is duplicative of her cause of action to recover [*10]damages for breach of contract (see Cooper, Bamundo, Hecht & Longworth, LLP v Kuczinski, 14 AD3d 644, 645 [2d Dept 2005]). Plaintiff, however, argues that she is entitled to obtain relief, pursuant to her claim of unjust enrichment, if the contract is void by reason of the statute of frauds. This argument must be rejected since plaintiff may not utilize an equitable theory of recovery to circumvent the statute of frauds (see Wings Assoc. v Warnaco, Inc., 269 AD2d 183, 184 [1st Dept 2000], lv denied 95 NY2d 759 [2000]; American-European Art Assoc. v Trend Galleries, 227 AD2d 170, 171 [1st Dept 1996]). "[T]he necessity of a writing may not be circumvented by the simple expedience of recasting the [cause of] action as one seeking damages for unjust enrichment" (J.E. Capital, Inc. v Karp Family Assoc., 285 AD2d 361, 362 [1st Dept 2001]; see also American-European Art Assocs., 227 AD2d at 171; Tallini v Business Air, 148 AD2d 828, 830-831 [3d Dept 1989]). Thus, summary judgment dismissing plaintiff's seventh cause of action must be granted (see CPLR 3212 [b]).
Plaintiff's eighth cause of action for punitive damages seeks to recover punitive damages and interest since October 2, 2009. The court notes that "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights" (Rocanova v Equit. Life Assur. Soc. of U.S., 83 NY2d 603, 613 [1994]). It is only "where the breach of contract also involves a fraud evincing a high degree of moral turpitude' and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations,' [that] punitive damages are recoverable if the conduct was aimed at the public generally'" (id., quoting Walker v Sheldon, 10 NY2d 401, 404-405 [1961]). 
Plaintiff contends that she is entitled to punitive damages because she has alleged a fraud claim and that the question of whether defendant's level of culpability meets the requisite standard for punitive damages is a question of material fact. This contention is devoid of merit. As discussed above, the court finds that plaintiff's fraud claim must be dismissed, and that plaintiff's allegations do not meet the requisite standard for punitive damages as a matter of law. In any event, inasmuch as the court has found that plaintiff's claims in this action must be dismissed, she is not entitled to any damages.[FN8]
Summary judgment dismissing plaintiff's eighth cause of action is, therefore, mandated (see CPLR 3212 [b]).
CONCLUSION
Accordingly, defendant's motion for summary judgment dismissing plaintiff's complaint against him is granted.
This constitutes the decision, order, and judgment of the court.
ENTER,
J.S.C.



Footnotes

Footnote 1:Plaintiff is not seeking the recovery of these funds in this action (Plaintiff's Dep. Transcript at 175).

Footnote 2:At the time of the oral argument of defendant's motion on January 6, 2016, plaintiff conceded that her sixth cause of action for tortious business interference should be dismissed. Thus, summary judgment dismissing plaintiff's sixth cause of action has been granted (see CPLR 3212 [b]). 

Footnote 3:A deposition on written questions was answered by defendant, who is presently incarcerated after pleading guilty to charges involving the distribution of marijuana.

Footnote 4:It is noted that while defendant's answer, dated May 15, 2014, admitted the allegation in paragraph 6 of the complaint, after retaining new counsel, defendant served an amended answer, dated July 25, 2014, in which he denied each and every allegation set forth in that paragraph. Plaintiff points out that defendant's amended answer was untimely served, without leave of court, more than 20 days after the service of his original answer (see CPLR 3025 [b]). Defendant has responded with an e-mail to plaintiff's counsel evidencing plaintiff's agreement to accept the amended answer. 

Footnote 5:There is no doubt that plaintiff and defendant enjoyed a relationship of confidence and trust generally and particularly with respect to their joint ownership of the Fourth Avenue Property.

Footnote 6:Plaintiff, in attempting to support her fourth cause of action for fraud, also points to her allegation, in paragraph 47 of her complaint (which is alleged under her seventh cause of action for unjust enrichment), that defendant utilized her efforts, capital contributions, ideas, reputation and contacts without just compensation. Plaintiff's own deposition testimony indicates, however, that she received substantial benefits during her association with defendant that might well adequately compensate her for her efforts in assisting defendant with the management of the Fifth Avenue Property. Plaintiff's deposition testimony indicates that her financial contribution is limited to half of the $40,000 paid from the TD Bank account for the purchase of Heights Realty stock, for which plaintiff does not seek recovery.

Footnote 7:Plaintiff, in her conversion cause of action, does not seek recovery of her half of the $40,000 in the joint TD Bank account based upon an unauthorized withdrawal of her share of this joint account. Rather, plaintiff acknowledges that she authorized this withdrawal, and seeks, in this cause of action, a claimed interest in the Fifth Avenue property based upon defendant's use of these funds. In any event, the issue of the various withdrawals made by the parties from the TD Bank account may be addressed in the context of the accounting sought in the partition action.

Footnote 8:It is also noted that "there can be no separate cause of action for punitive damages" (Rocanova, 83 NY2d at 617).